## LANSING *v.* PERRY.

1. NUISANCE—AUTOMOBILE SALES BUSINESS NOT NUISANCE PER SE—GARAGES.

An automobile sales business, conducted for the purpose of showing and selling new cars, and any such service as may be incident to the sale of cars, either new or such as may be taken in exchange for new ones, *held*, not to be a nuisance *per se*.

2. SAME—INJUNCTION—EXPANSION OF BUSINESS DISTRICT.

The construction of a building for the purpose of conducting therein an automobile sales and service business

On the question as to whether garage is a nuisance, see note in L. R. A. 1917E, 369.

on the main business street of a city, although in a district hitherto used for residential purposes, where the lots are unrestricted, and the noise of traffic thereon is already very great, should not be enjoined as a nuisance, especially where such expansion is necessary and logical.

3. SAME — CONTEMPLATED NUISANCE — INJUNCTION — PREMATURE SUIT.

Where a building about to be erected or proposed business to be conducted on unrestricted property is not *per se* a nuisance, and the apprehended injury is but conjectural and contingent, equity will refrain from interfering until an actual nuisance is made manifest.

Appeal from Ingham; Chester (Guy M.), J., presiding. Submitted June 24, 1921. (Docket No. 64.) Decided October 3, 1921.

Bill by Alicia Lansing and others against Milton H. Perry to enjoin the construction of a garage. From a decree for defendant, plaintiffs appeal. Affirmed.

*C. W. & W. S. Foster* and *Cummins & Nichols*, for plaintiffs.

*Frank L. Dodge* and *Dean W. Kelley*, for defendant.

STEERE, C. J. Plaintiffs filed this bill of complaint to enjoin defendant Perry from constructing a proposed garage building, and operating therein a public garage on a lot owned by him in block 172 of the city of Lansing, located on the east side of Washington avenue in the neighborhood where they reside. The suit was duly brought to issue and heard on testimony taken in open court. While much testimony was taken the existing facts are little in dispute, contradictions in the evidence offered by the respective sides running largely to diverse opinions and inferences. Not only defendant's lot, but all property in that block and vicinity is entirely unrestricted. Injunction re-

straining erection of the proposed building was denied but plaintiffs' bill was not entirely dismissed, the court's decree being so framed as to prohibit certain specified activities particularly protested against by plaintiffs and require the business done in said building to be so conducted as not to create a nuisance. The circuit judge who heard the case filed an opinion with findings which very accurately marshals the salient facts and clearly presents the questions of law involved.

After a careful examination of the record, in verification of the facts stated, arguments presented in briefs filed, and consideration of the authorities cited, we find the statement of facts and conclusions of law so satisfactorily stated and reasoned by the trial judge that we are content to adopt his opinion, as follows:

"Washington avenue running north and south is the principal street in the city of Lansing. A large portion of this avenue is paved to the width of 75 feet. In the business portion of the city and as far south as Lenawee street, it is paved to the width of 75 feet, and from Lenawee street south to the bridge across Grand river it is paved to the width of 40 feet. There is a double street car track on this avenue through the business portion of the city running south and crossing Grand river bridge. That for some distance south of Grand river bridge on Washington avenue the larger portion of the frontage is occupied by factories and for business purposes with only a few places in this section where people live.

"This suit has reference to the properties fronting on Washington avenue between Lenawee street and the Grand river bridge, a distance of three and one-half blocks, the half block being next to the river.

"The frontage on Washington avenue on each side of the avenue from Lenawee street to Hillsdale street is substantially 390 feet, from Hillsdale to St. Joseph street is substantially 275 feet, and from St. Joseph street to Main street is 231 feet. The blue print

Exhibit A (copy from the record is printed herewith), which is conceded to be correct, attached to the bill of complaint, shows the lots contained in these blocks.    Referring to this blue print the evidence

shows: That between Lenawee and Hillsdale streets on the west side of Washington avenue the north one-half of the frontage (marked Bowerman place) has been purchased with the view of building a business block or selling it for a business place, on the other half of this frontage are the Elliott and Davis residences. On the east side of the avenue there are three places of business fronting on the avenue at the north end of this block, the next two places south of these small store buildings have old houses occupied by tenants and are being offered for sale for business purposes, the south half of this frontage is marked Whitney and is a nice residence. Between Hillsdale and St. Joseph streets on west side of the avenue, on the north one-fourth of frontage, is a residence occupied by the I. O. O. F. for office purposes, the next place south being one-fourth of frontage is Thorburn's residence, and on back end of lot is a veterinary hospital, the balance of the frontage of this block belongs to the General Motors and is vacant property. The evidence indicates that this corner will be occupied by a business block. On the east side of the avenue, the north half of the block belongs to the Women's Club, on this lot is a good sized club house and quite spacious grounds. South of this property are two residences, Davis and Nichols. Between St. Joseph and Main streets on the west side of the avenue are situated the residences of two of the plaintiffs, Potter and Olds, each owning one-half of the frontage. On the east side of the avenue the north 65½ feet fronting on the avenue is owned by Rehm and occupied as a residence and is for sale. The next lot 50 feet front south of above property is a vacant lot belonging to defendant and is the property in question. The next lot 50 feet frontage belongs to plaintiff Lansing, and is her residence and has been for many years. The next lot 65½ feet frontage is vacant property belonging to plaintiff Olds. Between Main street and the river on the west side of the avenue is the property of plaintiff Scott and is a residence, and on the east side of the avenue is the property of Johnson upon which is a residence.

"Plaintiffs contend in this case that defendant, by constructing building for the purpose of carrying on

a business on the lot in question, is interfering with long established rights of theirs, namely the right to have, maintain and enjoy their homes free from the disturbance and annoyance of a business activity in their midst and that such a structure is unsightly and out of harmony with a district for residential purposes and therefore would destroy the comfort, enjoyment and desirability of such homes and lessen the value of their property. Plaintiffs also claim that defendant purposes to maintain a garage with all the incidents of such a business such as storing and selling gasoline, repairing cars, testing out engines, and storing cars with all the objectionable odors, noises and dangers that go with such a business, and therefore such business constitutes a nuisance in their midst. There is no claim of any building restrictions attached to any property in this locality and the evidence shows that defendant has received a building permit from the proper authorities to construct the building in question. The evidence shows that this is to be a two-story building, sides stuccoed, properly and well constructed of good material and workmanship, that the front of the building is artistically designed and constructed of the best material, and when completed will be ornamental as a business place.

"The evidence shows that this is not to be a garage as charged in the bill of complaint but that this is to be a place for the showing and sales of new cars and any such service as is incident to the sale of cars. There is not to be any gasoline filling station on or connected with these premises and no gasoline sold at this place. The evidence shows a very large amount of traffic on this street at this time and much noise. The proposed place of business and business will not to any particular marked degree increase the use of the street nor the noises and odors already occasioned on this street by street cars, interurban cars, freight cars and trains, automobiles and trucks. This building is not a nuisance. The business to be carried on therein is not a nuisance *per se*. Under the evidence in the opinion of this court the proposed business is not and will not be a nuisance.

"Another question that should not in any judgment

be lost sight of is the growth, progress and advancement of a city. If this city, the capital of the State, is to develop, as it should be the pride of everyone to have it, there must necessarily be an expansion of its business district. Such business district should not be broken up and scattered. Manufacturing, no doubt, should be installed in surburban districts. Commercial and mercantile business is better if centrally located and in one business district. The growth of Lansing is such that its business district must expand. It can not expand without encroaching on and intruding into residential districts and to some inconvenience homes. One home is as sacred to the owner as another, regardless of its value. Which way can the business district of Lansing expand and which is the most natural way?

"It appears to the writer of these findings that the most logical way for expansion is along Washington avenue and with the view that probably all the territory between the business now on Washington avenue north of Grand river may connect with the business south of Grand river.

"The thoughts contained in the above paragraph are suggested by the following language quoted in the case of *Dittman* v. *Repp*, reported in 33 Am. Rep. at page 327 (50 Md. 516):

" 'If a man lives in a town of necessity he must submit himself to the consequences of the obligations of trades which may be carried on in his immediate neighborhood, which are actually necessary for trade and commerce, also for the enjoyment of property, and for the benefit of the inhabitants of the town.'

"In this case the court says on the same page:

" 'Everyone taking up his abode in the city must expect to encounter the inconveniences and annoyances incident to such community; and he must be taken to have consented to endure such annoyances to a certain extent.'

"The introduction of business houses and business in this territory lessens the value for residence purposes, but it materially increases the value of the property for business purposes. The value largely depends on the purpose for which it can be used. Aside from the question of sentiment and one or two

very large homes, the property is as valuable, if not more valuable, for business purposes than it is for residences.

"Counsel for plaintiff contend that this case is controlled by *Barth* v. *Hospital Ass'n,* 196 Mich. 642, and *Saier* v. *Joy,* 198 Mich. 295 (L. R. A. 1918A, 825), and also that *Birchard* v. *Board of Health,* 204 Mich. 284, sustain their contention. The *Barth Case* is one involving a psychopathic or insane hospital; the *Saier Case* is one involving a morgue and undertaking rooms, and the *Birchard Case* involves a pest house. In the first two cases the court found that the mental condition of residents would be affected by constant fear, annoyance and inconvenience, making living in the vicinity uncomfortable, unpleasant and unsafe. In the *Birchard Case* the court referring to the first two cases said:

"'We recognized that there might be no actual danger if properly conducted, but that their maintenance in close proximity to the home would create such dread and fear in the mind of the normal person as would destroy the comfort, the well being and the property rights of the plaintiffs, depressing the mind and lowering the vitality of the normal person rendering one more susceptible to disease and reducing the value of the property so situated and rendered injunctive relief.'

"In this case the court says:

"'But substantially all the experts who testify to this effect agree that their opinion is not shared by the general public, and that the normal person has a horror and dread of a pest-house and a fear of infection from proximity to it.'

"These cases have the elements of dread, fear and horror, which lessen vitality, strength and resistance of the normal person and subjects him more readily to annoyance, discomfort and disease. The instant case does not possess these elements and in my judgment those cases are not controlling in this.

"Counsel for complainant also cite *McMorran* v. *Fitzgerald,* 106 Mich. 649. Injunctive relief was granted in this case when defendant invaded a suburban residential district and engaged in an offensive and noisy business which injured plaintiff's property

by smoke and soot and made life uncomfortable by unpleasant odors and noises.

"The evidence in this case shows that the noises on this street now are such that at times you cannot carry on a conversation on the porches of the homes, that there is the usual smoke and odors occasioned by cars being used in large numbers on the street, and it is speculative and very uncertain as to whether the business intended as shown by the evidence will perceptibly add to the turmoil, annoyance and inconvenience now experienced by residents on this avenue. The question of whether a business not prohibited by law and which is not immoral is a nuisance is one of fact depending on the manner in which it is operated, its location and the effect it has on those in the community in which it is located. It must be something more than distasteful and displeasing. It must amount to an annoyance, detriment and injury. As before stated, the evidence does not show that the proposed business will be a nuisance. True, a business might be operated so as to become a nuisance if it should be conducted as plaintiffs charge in their bill of complaint, but that is not the situation in this case.

"Then the other question in this case is, Can a man who owns property on Washington avenue between the present business section north of Grand river and the business section south of Grand river introduce a lawful business in his house or build a business block for a lawful business where his home stands if objected to by the residents of that territory? It should be remembered that this is not a restricted territory. I am impressed that the owner of property in this section has a right to build a business place in this section for a lawful business therein and conduct such lawful business so long as it does not become a public or private nuisance. If plaintiffs can stop this building because it is introducing business in a residential district and thereby damaging their property for residence purposes but increases its value for business purposes, then plaintiffs can prevent the encroachment of the business district toward their residences which would make their property less desirable for residences but more desirable

for business purposes. The damage for residence purposes is compensated for by the increased value for business purposes. It is not attempted in this case to expand or introduce business in a suburban district.

"With this view, I think defendant should be permitted to construct the building as outlined and described by him and carry on the business of sales and show-room as described by defendant, but that defendant shall not keep for sale or sell gasoline on the premises, nor obstruct the street by parking cars thereon, nor run a general repair shop. He shall be permitted to carry on such repair service as is incident to the handling of cars which are a part of his show and sales business. This to permit the receiving an old car in exchange when a new car is sold and the sale of the old car and such reasonable repair to same as is customary in a sales and show department, and defendant shall not operate the business so as to occasion unusual noises or odors in such a sales and show business. No business shall be conducted in this place so as to constitute a private or public nuisance."

This case is clearly governed by the well recognized general rule that when a building about to be erected or proposed business to be conducted on unrestricted property is not *per se* a nuisance and the apprehended injury is but conjectural and contingent, equity will refrain from interfering until an actual nuisance is made manifest. That principle finds support in *Siegel* v. *Wayne Circuit Judge,* 155 Mich. 459; *Mackenzie* v. *Pauli Co.,* 207 Mich. 456; *Wolfschlager* v. *Applebaum,* 213 Mich. 180.

The decree is affirmed, with costs to defendant.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. WIEST, J., did not sit.