DAUGHERTY *v.* WARD.

1. ESTOPPEL—INJUNCTION — BUILDING RESTRICTIONS — RECIPROCAL NEGATIVE EASEMENTS.

> Where the platters of a subdivision placed no restrictions thereon, but sold most of the lots subject to restriction to be used for residence purposes only, which has been generally observed, but it is evident that they intended the southern section of the plat to be devoted to business purposes, of which recent purchasers of lots had actual or constructive notice, the purchaser of an unrestricted lot therein may not be enjoined, at the instance of lot owners, from operating a coal yard thereon on the theory that, the platters having derived pecuniary benefits from the restrictions imposed, which are in the nature of negative reciprocal easements, they are estopped from conveying said lot free from restrictions.

2. NUISANCE—COAL YARD NOT A NUISANCE PER SE.

> A small coal yard proposed to be located on alleys in a section of an improved subdivision intended to be devoted to business purposes, which is to be inclosed by a nine-foot fence and to be operated without machinery would not be a nuisance *per se*, nor may it be said, under the proofs, that it would be a nuisance as a matter of fact, but whether it would be a nuisance may better be determined after it is in operation.

Appeal from Wayne; Browne (Clarence M.), J., presiding. Submitted June 10, 1927. (Docket No. 82.) Decided October 3, 1927.

Bill by J. A. Daugherty and others against William P. Ward to enjoin the establishment of a coal yard. From a decree for plaintiffs, defendant appeals. Reversed, and bill dismissed.

[1]Deeds, 18 C. J. § 459; [2]Nuisances, 29 Cyc. pp. 1170, 1222; 32 L. R. A. (N. S.) 522; 20 R. C. L. 450.

*Emmons, Klein, Ferris & Cook* (*Joseph H. Clark,* of counsel), for plaintiffs.

*Leo J. Ward* (*John C. Coots,* of counsel), for defendant.

BIRD, J.    The plaintiffs herein are seeking an injunction to prevent the defendant from constructing and operating a coal yard on lot 112 of the addition to Dailey Park subdivision, in the city of Detroit. The addition contains 506 lots, and is pretty well improved.    The land underlying this addition was owned by the Grand River Land Company, and by Charles W. Muntz and his wife, Anna Muntz.    They joined forces in platting the addition.    After it was platted each party took his respective share of the subdivision. The Grand River Land Company took lots numbered 1 to 296, both inclusive, and Muntz and his wife took lots 297 to 506.    There are no restrictions on the plat, but most of the lots on the addition have been sold with the following restriction:

"Single private residences, double house or two-family flat, to be set back at least 30 feet from the front line of the lot, and shall not be built or project within two feet of any dividing property line, street or alley line excepted, and shall not cost less than $2,000 for a single residence, and $3,000 for a duplex, and $3,500 for a double house.    Said building shall be used for none other than residence purposes; style of building in all cases shall meet with the approval of the grantor.    Projections forming a part of the residence or dwelling are construed as a part thereof, and must be within the building line; porches and steps will not be construed as a part of the building, and may be set over the building line if the lot owner so desires; intoxicating liquors shall never be sold upon the said premises."

The lot involved in this controversy is clear to the southern end of the addition, and is numbered 112. This lot was sold by the Grand River Land Company

without restrictions of any kind. The Grand River Land Company was advised in advance of sale what the defendant was buying it for, that he intended to carry on a coal yard.

(1) Plaintiffs, who live in the vicinity, object to this use, and instituted this suit to enjoin it. The position of counsel for plaintiffs is that, while there are no restrictions on the plat, the subdividers

"having derived definite pecuniary benefits from the restrictive covenants by way of building restrictions originally imposed upon all of the lots in the subdivision, are estopped from conveying lot 112 free from restrictions, and that the defendant, as the successor in title of the Grand River Land Company, is also estopped from operating any business on lot 112 which would constitute an infringement or violation of the general plan of restrictions imposed upon all of the lots in said subdivision;" citing *Allen* v. *City of Detroit*, 167 Mich. 467 (36 L. R. A. [N. S.] 890).

(2) It is also claimed that the proposed coal yard would be a nuisance *per se*. At any rate, the location of it in the vicinity of these residences would make it a nuisance.

1. Counsel's argument on the theory of negative easement would perhaps have more force if it were directed to any other location on the addition. They appear to overlook, however, the fact that the platters evidently planned the extreme southerly portion of the addition would be devoted to a business district to serve in part the daily wants of those living upon the addition. Lot number 112 is a triangular shaped lot, with no street frontage, as will be seen from the sketch hereto annexed. It is bounded on two sides by alleys, and on a third by an unrestricted lot, and is situate only a few feet from Tireman avenue, a street devoted to business, and platted for such purpose. There are several other lots in the vicinity upon which there are no restrictions. In the next block

south of Tireman avenue and south of the addition there are manufacturing plants, a negro settlement,

and a railway a little farther to the south.   On Tireman avenue the restrictions are as follows:

"A store building to cost not less than $2,000 for each lot, as recorded, and to be of brick veneer construction, or its equivalent, and conform to the building code of the city of Detroit for store buildings fronting on Tireman avenue, and shall not be used for

manufacturing purposes, subject to the following restrictions: Style of building in all cases shall meet with the approval of the grantor; intoxicating liquors shall never be sold upon said premises."

There are, and have been for some time, business places upon Tireman avenue. The record is persuasive that the platters intended that this location should be given over to such business as was necessary to supply the household wants of those living on the addition, and those who have recently purchased lots in the addition have had notice of what that location was going to be used for. If any did not know, it was their own fault, as slight diligence would have disclosed it. We think, in view of these facts, and the further fact that this lot 112 was sold without any restrictions, that counsel's argument with reference to negative easement is not applicable.

2. The proposed coal yard is what is called by the trade an "inside coal yard." It is situated on no railway, and has no machinery used in connection with it to handle the coal or to screen it. In fact, the lot is not large enough to carry on a very extensive coal business. Inclosed as it is within a nine-foot fence, it could not be much of a nuisance to those living in the vicinity. There was considerable proof taken as to whether it would, in fact, be a nuisance. We are not of the opinion that the coal yard in this vicinity would be a nuisance *per se.* 29 Cyc. p. 1170. Neither are we convinced from the proofs that it would be a nuisance as a matter of fact. Whether it will be a nuisance can better be told after it is in operation.

The decree will be reversed and the bill dismissed, with costs to the defendant.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred. CLARK, J., did not sit.