PERRY MOUNT PARK CEMETERY ASS'N *v.* NETZEL.

1. NUISANCE—CEMETERIES—AUTOMOBILE WRECKING AND PARTS SALVAGING BUSINESS—REGULATION.

   In suit by private cemetery corporation to restrain operation on unrestricted property across street of business of wrecking automobiles and salvaging parts thereof, decree permanently enjoining the conduct of defendant's business *held,* unnecessarily destructive and not merely regulative, where offensive use can be prevented by reasonable requirements such as deadening noises and eliminating smoke and disagreeable fumes from burning waste material during hours when cemetery is usually visited.

2. SAME—ESTHETICS—BUSINESS FOR PROFIT.

   Mere esthetics is beyond the power of the court to regulate in suit between two parties engaged in business for profit on unrestricted property across the street from each other.

3. SAME — UNDESIRABLE   NEIGHBORS — CEMETERIES — AUTOMOBILE WRECKING BUSINESS.

   Fact that neither cemetery nor automobile wrecking business makes the most desirable neighbor should be considered in suit by owners of former to restrain operation of latter across the street as a nuisance.

4. EQUITY—INJUNCTION—CEMETERIES—AUTOMOBILE WRECKING BUSINESS.

   In suit by private cemetery corporation to restrain operation of automobile wrecking and parts salvaging business across the street, a court of equity may grant such relief as will fit the facts shown.

5. CEMETERIES—ADJOINING PROPERTY—NUISANCE.

   Location of cemetery does not render adjoining or adjacent property static, but leaves it open to legitimate uses, short of nuisance, evidence here indicating adjacent land thereto could not be sold for residential or retail business purposes.

6. AUTOMOBILES—WRECKING BUSINESS NOT NUISANCE PER SE.

   The business of wrecking automobiles and salvaging parts thereof is not a public or private nuisance *per se* and can be so operated as not to constitute a nuisance.

7. NUISANCE—AUTOMOBILE WRECKING AND PARTS SALVAGING BUSINESS—ORDINANCES—EVIDENCE.

   In suit to restrain operation of automobile wrecking and parts salvaging business as a nuisance, existence of ordinance licensing and regulating dealers in such business is an element to consider but of little weight in instant case where at time defendant purchased his property the ordinance required applicant for such license to obtain written consent of owners of 50 per cent. of strictly residential property within 500 feet and plaintiff cemetery owned land which it had reserved for future cemetery purposes on both sides of defendant and immediate effect amendment to ordinance requiring approval of 50 per cent. of deed holders of land within 500 feet became effective but two days before bill herein was filed.

8. SAME—INJUNCTION—CEMETERIES—AUTOMOBILE WRECKING BUSINESS—RELIEF—EQUITY.

   Disposal of rubbish without burning it, installation of balers and noiseless shears for cutting metal and construction of building to house cars and some of the metal on lot used by owner and operator of automobile wrecking and parts salvaging business *held*, all the relief to which plaintiff cemetery corporation, owning private cemetery across street, was entitled, where lot already had tight board fence nine feet high along highway line and six feet eight inches high for 350 feet along side lines.

Appeal from Oakland; Rogers (Goodloe H.), J. Submitted October 16, 1935. (Docket No. 99, Calendar No. 38,621.) Decided January 6, 1936.

Bill by Perry Mount Park Cemetery Association, a Michigan corporation, against Adolph Netzel and another to restrain operation of automobile wrecking and parts salvaging business. Decree for plaintiff. Defendant Netzel appeals. Modified and affirmed.

*Kinney & Adams,* for plaintiff.

*Robert D. Heitsch,* for defendant Netzel.

WIEST, J.   Defendant purchased unrestricted property in the city of Pontiac, across the highway from plaintiff's cemetery, and established thereon the business of wrecking automobiles and salvaging parts thereof.

Plaintiff filed the bill herein to restrain operation of such business, its accompanying noise, smoke from burning rubbish and unsightly accumulations, and the court, by decree, permanently enjoined defendant "from conducting the business of used auto car parts" and "the commission of any acts on said premises in any way related to the business of used auto car parts, including the selling, dismantling, or storing of used or wrecked automobiles."

Review is prosecuted by defendant.

The decree goes too far.   It strikes down defendant's business.   It should regulate and not destroy. Offensive use of defendant's premises can be prevented by reasonable requirements, deadening noises and eliminating smoke and disagreeable fumes from burning waste material during hours when persons usually visit the cemetery.   Noise at night will not disturb the absent, nor will smoke or fumes occasion the silent sleepers any discomfort.

Defendant's plant may be unsightly and detract somewhat from the beauty of view from the cemetery, but mere esthetics is beyond the power of the court to regulate, especially in a case like this where both parties are in business for profit.   A cemetery is not the most desirable neighbor, neither is defendant's wrecking plant, and, therefore, when the owner of one complains of the undesirableness of the other, such fact should be kept in mind.

Counsel for plaintiff had the applicable rule in mind in stating to the court before introduction of proofs:

"We will be perfectly frank to tell the court if this place were covered up or something of that kind, we could have no legal objection to it. We are asking for injunctive relief and this being a court of equity, the court has a right to fit its decree to the facts shown."

Defendant's lot has a frontage of about 145 feet on the highway, runs back 1,550 feet; along the highway line he has erected a tight board fence nine feet high and along the side lines, for a distance of 350 feet, a like fence six feet, eight inches in height. He plans to erect a building 60 by 200 feet, in which to store the saleable, dismantled parts, metals and cars.

Plaintiff also owns undeveloped land across the highway from the cemetery and adjoining defendant's land, which it plans to use for cemetery purposes when the demand comes, and complains that the desirability thereof for such purposes is injured by the wrecking plant of defendant.

Location of a cemetery does not render adjoining or adjacent property static, but leaves the same open to legitimate uses, short of nuisance.

Defendant's business is not a public or private nuisance *per se, Netzel* v. *Township Board of Waterford Township,* 267 Mich. 220, and can be so operated as not to constitute a nuisance. If, and when plaintiff follows its intention of using the land, adjoining defendant's narrow strip, for cemetery purposes, then defendant's land will be undesirable for residential or mercantile purposes. An experienced real estate broker testified that, even now, in

his opinion, defendant's property could not be sold for residential or retail business purposes.

Plaintiff invokes an ordinance adopted by the city of Pontiac "to license and regulate dealers in used auto parts and to provide a penalty for violation thereof" and, while having to concede that it is not wholly determinative of the issues, contends that it should have weight upon the question of nuisance.

The concession is right, *Village of St. Johns* v. *McFarlan,* 33 Mich. 72 (20 Am. Rep. 671); *Conway* v. *Gampel,* 235 Mich. 511, and the contention in this instance is weak. The ordinance in force at the time of defendant's purchase did not prevent the use of the property for the purpose intended, for it only provided for "the written consent of 50 per cent. of the owners of exclusively residential property within a radius of 500 feet of the property where such business is to be conducted." Plaintiff then owned the adjoining property and, inasmuch as it was reserved for future cemetery purposes, it was not "exclusively residential property."

An immediate effect amendment to the ordinance, on January 7, 1935, two days before the bill herein was filed, was so clearly special to the case at bar as to deprive it of all appealing effect upon the issues presented, for it required "a certified list of the deed holders of the majority of real property, * * * within an area of 500 feet distant measured at right angles in each direction from each boundary line of the lot," and approval by a majority of such deed holders. This immediate effect amendment, on the eve of filing the bill, manifestly placed defendant's business, on his own land, wholly at the will of plaintiff, for the plaintiff owned the land on both sides of defendant's land and, of course, did not consent.

Defendant testified:

"I would be more than willing to co-operate with them (plaintiff) in any way, shape or form that is reasonably possible. Of course, I don't see how I can make hammers quit making noise but as far as any rubbish that would have to be burned, we could even eliminate burning it, there are ways of disposing of it without burning it but the reason we have been burning it is it seemed to be the best method.

\* \* \*

"We don't expect to let our tin pile up like that on Perry street. We are going to put a shearer in and cut it up. That will condense it and we might even bale it and as soon as there is a carload of tin together, we will naturally ship it out. It will accumulate in carload lots, but a carload isn't very much. It will be stored outside of the building.

\* \* \*

"The latest kind of shears wouldn't make any noise. We haven't bought our shears yet but when we buy them, we will buy the latest type. The older type caused considerable noise. I would be willing to agree to put in the new type of shears.

"I have discussed with the city officials the possibility of putting a building over that lot. I intend to go ahead with my plans. That building would be 60 feet wide and 200 feet long. My lot is 141 or 145 feet wide. We are going to use the building to put parts in. We will have all the cars inside that we can possibly get in. It would cover all the cars we have out there now. The more valuable metals would be kept inside. You understand, we are not in the junk business."

We think that compliance by defendant with the measures mentioned by him will accord plaintiff all the relief it is entitled to have.

The decree in the circuit court is so modified and decree here will make it mandatory for defendant to

install the measures mentioned. Defendant will recover costs.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL, and POTTER, JJ., concurred. EDWARD M. SHARPE, J., did not sit.

The late Justice NELSON SHARPE took no part in this decision.