GABLEMAN v. DEPARTMENT OF CONSERVATION.

1. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—QUESTIONS REVIEWABLE.
   On appeal in suit to enjoin use of lakefront lots as a public fishing site, question as to whether occupancy thereof was within meaning of the restriction is before Supreme Court on *de novo* review.

2. COVENANTS—OCCUPANCY.
   "Occupancy," as used in restrictive covenants running with the land, means "actual possession."

3. SAME—PUBLIC FISHING SITE—OCCUPANCY—RESTRICTION OF OCCUPANCY TO CAUCASIANS.
   In suit to enjoin the use of four lakefront lots as a public fishing site, the fact that those of the Negro race might have access to the lake for fishing purposes through the facilities thereby afforded by the State department which purchased the lots would not constitute occupancy or possession of such lands in violation of covenant restricting occupancy to persons belonging to the Caucasian race.

4. SAME—RESTRICTIONS MAY NOT BE ENFORCED AGAINST PARTY HAVING NEITHER ACTUAL NOR CONSTRUCTIVE NOTICE THEREOF.
   Restrictions which are not a matter of record and of which a party has neither actual nor constructive notice may not be enforced against such party.

5. SAME—PUBLIC FISHING SITE—RESIDENTIAL PLAN—BOAT LIVERY.
   Use of four contiguous lakefront lots as a public fishing site may not be enjoined by adjoining owner on ground that subdivision in which they are situated has been developed pursuant to plan restricting property to residential use only, where one lot therein has been used as a boat livery for 10 years, since the alleged plan has not been followed.

6. NUISANCE—ESTHETICS—PUBLIC FISHING SITE.
   Mere esthetics is beyond the power of the court to regulate in suit by adjacent lot owner to enjoin use in subdivision de-

voted largely to residences of four lakefront lots as a public fishing site because of destruction of the natural shore line, attendant noise from parking of cars, and establishment of nearby traffic hazard.

7. SAME—INJUNCTION—EQUITY—ANTICIPATED NUISANCE.
As rule, equity will not interfere in advance of creation of nuisance, where injury is doubtful or contingent, and anticipated merely from use to which property is to be put.

8. WATERS AND WATERCOURSES—PUBLIC FISHING SITE—CONDEMNATION—ADVERTISING STATE—PUBLIC PARKS.
The State should not be required to condemn property surrounding public fishing sites in order to make a lake available to the public in view of the fact that considerable public funds have been expended in advertising the State as a summer playground, and in the upkeep of public parks and playgrounds.

9. EVIDENCE—JUDICIAL NOTICE—ADVERTISING OF STATE.
Judicial notice is taken of the fact that public funds have been expended in advertising the State as a summer playground.

10. NUISANCE—PUBLIC FISHING SITE—INJUNCTION.
A public fishing site on four contiguous 50-foot lakefront lots at an inland lake which involves filling in the ground, grading it, building a boat ramp and parking lot and erecting signs cannot be said to constitute a nuisance, hence the establishment thereof will not be enjoined although the proper authorities may thereafter be required to regulate traffic and supervise its operation.

11. COSTS—PUBLIC FISHING SITE—INJUNCTION.
No costs are allowed in suit to enjoin the establishment of a public fishing site on four lakefront lots because of the nature of the case.

Appeal from Oakland; Holland (H. Russel), J. Submitted June 13, 1944. (Docket No. 11, Calendar No. 42,652.)   Decided September 11, 1944.

Bill by Charles Gableman against the Department of Conservation of the State of Michigan to restrain violation of property and general plan restrictions. Decree for plaintiff. Defendant appeals. Reversed and bill dismissed.

*Verne C. Hampton,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Maurice M. Moule* and *Daniel J. O'Hara,* Assistants Attorney General, for defendant.

BUSHNELL, J.  Plaintiff Charles Gableman is the owner of lot 9 in Sunrise Heights subdivision, Highland township, Oakland county, Michigan, fronting on White lake.  He has occupied these premises for some 20 years and has invested upwards of $7,500 in a home thereon.  In pursuance of its policy to make the waters of the State available to the public, defendant Department of Conservation purchased four contiguous 50-foot lots in this subdivision, *i. e.,* lots 10, 11, 12 and 13, which immediately adjoin plaintiff's property.  The restrictions of record in this subdivision read substantially as follows:

"Said land is subject to the following restrictions which will run forever with the land to-wit: said lot shall not be sold, leased or occupied to or by any person whatsoever not belonging to the Caucasian race."

A deed executed in 1942 on lot 11 contains the following restriction:

"Said lot shall not be sold, leased or occupied to or by any person whatsoever not belonging to the Caucasian race."

After securing title to the lots the department filled in the shore line at a narrow point near the public roadway in order that fishing boats might be launched into the lake from the roadway, and to complete the project the department plans to do certain grading on top of this fill, sod the same, place guard posts running from the county highway

in a semicircle pattern to provide a roadway for cars to drive off the main road while launching boats, and to construct a timber boat ramp from the top of the fill to the water's edge, and to erect signs.

Before this work was completed, plaintiff filed a bill of complaint in the Oakland county circuit court in which he averred that a public fishing site is contrary to the restrictions upon the use of the premises and to the general plan in existence in the subdivision. He alleged that if defendant completed its project it would constitute a nuisance in that:

"(a) Excessive noise will come from the intended use.

"(b) Defendant by said construction will destroy the natural shore line, this preventing the plaintiff the full use and enjoyment of his property on said lake.

"(c) That plaintiff will be prevented free access to his property by said obstruction."

The circuit judge found that the character and complexion of the subdivision is strictly residential, and that of its 25 to 30 homes the cheapest one in the subdivision would be worth not less than $2,000, and that the presence of a public fishing site in the subdivision would—"definitely and perceptibly decrease the value of the homes in said subdivision and will especially decrease the value and be damaging to the property of the plaintiff whose house, of the value aforesaid, will be located only the width of a single drive from the lots to be used by the State for parking purposes for those utilizing said fishing site."

The circuit judge also said:

"The shore line of White lake opposite the four lots now owned by the State was, prior to the time that construction of the fishing site was commenced,

curving, the land gradually sloped from the road-way to the water's edge. The natural shore line has now been destroyed and will be further destroyed if the project is completed. The fill which is located in front of the four lots, which fill extends from the road into the lake, definitely destroys the natural beauty of the lake as viewed from plaintiff's property,—the pictures introduced in evidence not to the contrary. From the use to which the fishing site was put prior to the injunction, before the same was advertised or generally known to be a public site, it is apparent that said fishing site is and will continue to be a traffic hazard, located as it is on a curve of the road, which services the subdivision and adjacent communities. It was also apparent that there was and will be attending noise from the parking of cars and from people going to and from the lake. After viewing the property subsequent to the taking of the proof, the court finds that the natural shore line as well as the natural beauty has been changed and that such changes will be more apparent and more damaging if and when the State is permitted to complete its project which will entail the grading of the four lots to the level of the road in order to make them usable for parking purposes."

Defendant department has appealed from a decree permanently restraining it from—"violating the restriction of the subdivision known as "Sunrise Heights,' a subdivision located in Highland township, Oakland county, Michigan, and from carrying out or utilizing the property acquired, being lots 10, 11, 12 and 13, aforesaid, as a part of the public fishing site contemplated."

Although the trial judge held that the use of these lake lots by those of the Negro race would not constitute occupancy within the meaning of the language in the restriction, that question is before us on this hearing *de novo*. In the recent case of *Bradford* v. *Goldman,* 290 Mich. 338, this court followed the gen-

eral rule that occupancy means actual possession.
See, also, *Adair* v. *Bonninghausen,* 305 Mich. 137.

Applying the reasoning of these authorities, those
of the Negro race who might have access to White
lake for fishing purposes through the facilities of
the Department of Conservation would neither oc-
cupy nor possess these lands.

The court was of the opinion that a general plan
existed in the subdivision; that the character and
complexion of the neighborhood was residential;
and that a public fishing site within the subdivision
would be foreign to its development and should be
restrained.

"Restrictions which are not a matter of record
and of which a party has neither actual nor con-
structive notice cannot be enforced against such
party.   *   *   *   Nor are the plaintiffs entitled to
have the restrictions as such enforced." *Muskegon
Trust Co.* v. *Bousma,* 247 Mich. 98, 101.

See, also, *Kathan* v. *Stevenson,* 307 Mich. 485.

The record shows that one of the lots in this sub-
division has been occupied by a boat livery for ap-
proximately 10 years. If there ever was a so-called
plan restricting the property to residential use only,
that plan has not been followed and the department
is not bound by it.

The use proposed by defendant department can-
not be restrained on esthetic grounds.   A similar
argument was urged in *Smith* v. *City of Ann Arbor,*
303 Mich. 476, with respect to a city dump.   The
court said in that case:

"Plaintiffs claim that the dump is attractive to
school children, that its effect is harmful, decreases
the self-confidence of the pupils, causes an increased
tendency to lie and disobey, and is bad for their
morale.   As said by Mr. Justice WIEST in *Perry
Mount Park Cemetery Ass'n* v. *Netzel,* 274 Mich. 97,

a plant may be unsightly and detract somewhat from the beauty of the view, but mere esthetics is beyond the power of the court to regulate.

"Nor do we consider that the use of the dump should be enjoined because it occasions an increased use of the highways or because of increased traffic hazard conditions. To hold otherwise would lead to an absurdity."

The situation presented in the instant appeal is somewhat like that discussed in *Briggs* v. *City of Grand Rapids*, 261 Mich. 11, where the court said:

"Plaintiffs claim the use of the park for football exhibitions will constitute a nuisance to a large number of them living near the park. They also bring the suit as taxpayers in order to protect the city's rights. Without discussing whether the rule laid down in *Archer* v. *City of Grand Rapids*, 255 Mich. 485, is applicable in the instant case, there is no showing whatsoever that the purpose for which the park is to be used will be a nuisance *per se,* as plaintiffs fear. Equity, as a rule, will not interfere in advance of the creation of a nuisance where the injury is doubtful or contingent, and anticipated merely from the use to which the property is to be put. *Siegel* v. *Wayne Circuit Judge,* 155 Mich. 459; *Henry* v. *Sinclair,* 218 Mich. 296; *Lansing* v. *Perry,* 216 Mich. 23. The use of the property as an athletic field does not differ widely from that of a park and playground, and the fact that it may on a few occasions and for a limited time become a nuisance seems to be very problematical. Until there is a showing that the nuisance does exist, plaintiffs cannot complain."

The trial judge offered the following suggestion:

"Generally, it is the court's opinion that if the State of Michigan feels compelled to establish in connection with the four lots mentioned, a public fishing site, to the undeniable damage of the plain-

tiff's property, it should in all fairness proceed to condemn plaintiff's property to the end that he be reimbursed for the damages sustained.''

We do not think it should be held that the State should be required to condemn surrounding property in order to make its natural resources available to the public. The court will take judicial notice of the fact that considerable public funds have been expended in advertising Michigan as a summer playground, and certainly it is the policy of this State to afford its citizens and its visitors free and comfortable use of the waters and scenic beauties of Michigan. See *Attorney General, ex rel. Director of Conservation,* v. *Taggart,* 306 Mich. 432. Large sums are spent annually in the upkeep of public parks and playgrounds. Generally speaking, these are well conducted and maintained. The policy of the department in this instance is to be commended and not condemned. We cannot anticipate that this small State park will be conducted differently from others. Should the occasion require, the property owners are free to take such steps as may be necessary to require the proper authorities to regulate traffic in the vicinity and supervise the conduct of those who visit White lake. It cannot be said that the proposed plan will constitute a nuisance.

The decree is vacated and one may be entered here dismissing plaintiff's bill of complaint. Because of the nature of the case, the appellant will not be allowed costs.

NORTH, C. J., and STARR, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.