BUDDY v DEPARTMENT OF NATURAL RESOURCES

1. STATES—GOVERNMENTAL IMMUNITY—NUISANCE.

Acts of the state in the discharge of governmental functions which create a nuisance *per se* do not come within the governmental immunity otherwise accorded the state.

2. NUISANCE—NUISANCE PER SE—TOBOGGAN RUN—QUESTION OF LAW.

The question as to what constitutes a nuisance *per se* is one of law for the court; and a trial judge properly determined that a toboggan run is not a nuisance *per se.*

3. NUISANCE—LIABILITY FOR MAINTENANCE—WORDS AND PHRASES—
   TORTS.

A nuisance is a condition which may be dangerous, offensive or hazardous even with the best of care; and the liability for the maintenance of a nuisance is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition.

4. NUISANCE—STATES—GOVERNMENTAL IMMUNITY—TORTS—NUISANCE
   IN FACT—LEGISLATIVE ACTION.

A mere claim that a governmental activity constitutes a nuisance in fact does not circumvent governmental immunity from liability for torts by couching the action in "nuisance" terms; such immunity must stand until the Legislature wills to the contrary.

Appeal from the Court of Claims, Kenneth G. Prettie, J. Submitted Division 2 January 14, 1975, at Lansing. (Docket No. 20601.) Decided March 13, 1975.

Complaint in the Court of Claims by Leroy

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
[2] 58 Am Jur 2d, Nuisances §§ 12, 13.
[3] 58 Am Jur 2d, Nuisances § 1 *et seq.*

Buddy and Suzanne Buddy against the State of Michigan and its Department of Natural Resources for damages resulting from injuries sustained on a toboggan run at a state recreation area. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C.* (by *Jeffrey N. Shillman; John D. Lazar,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Russell E. Prins,* Assistants Attorney General, for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

M. J. KELLY, J. Plaintiffs brought suit in the Court of Claims alleging that the state and the Department of Natural Resources were liable for personal injuries sustained on a toboggan run at the Pontiac Lake Recreation Area. They appeal the trial court's order granting summary judgment[1] on the basis of governmental immunity, MCLA 691.1407; MSA 3.996 (107).

The complaint alleges, and we accept for our purposes as true, that the Department of Natural Resources permitted the man-made hill to contain debris. It was also alleged that the department improperly constructed the toboggan slide and failed to disclose hidden dangers; that the depart-

---

[1] Since governmental immunity is a "disability of the moving party" (defendant), accelerated judgment pursuant to GCR 1963, 116.1(5) would have been more appropriate. However, the technical impropriety of the form of the order is not reversible error. *Bloss v Williams,* 15 Mich App 228; 166 NW2d 520 (1968); *Curry v Detroit,* 49 Mich App 240, 241 fn 1; 211 NW2d 559, 560 fn 1 (1973).

ment failed to supervise and inspect the premises and that the hill was not maintained in a safe condition.

Plaintiffs' position is that they have properly pleaded a nuisance claim and that governmental immunity does not preclude such an action. Defendant's position is that no nuisance action was pleaded and that labelling the action "nuisance" does not circumvent governmental immunity.

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded." *Royston v City of Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936).

As to what constitutes a nuisance *per se, Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90, 95–96 (1959), quotes 66 CJS, Nuisances, § 3, 733–734 as follows:

"From the point of view of their nature, nuisances are sometimes classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or *per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances *per se* is necessarily limited, and by far the greater number of nuisances are nuisances *per accidens.* For this reason whether or not a particular thing or act is a nuisance is generally a question of fact, as discussed *infra* § 8, to be determined in the first instance before the term 'nuisance' can be applied to it. * * *

"The difference between a nuisance *per se* and one in fact is not in the remedy but only in the proof of it. In the one case the wrong is established by proof of the

mere act and becomes a nuisance as a matter of law, in the other by proof of the act and its consequences."

Moreover, a nuisance *per se* "arises when one so uses his land as to cause unreasonable interference with the use and enjoyment of the land of another". *Young v Groenendal,* 10 Mich App 112, 116; 159 NW2d 158, 159 (1968), affirmed by an equally divided court, 382 Mich 456; 169 NW2d 920 (1969).

In *Brown v Nichols,* 337 Mich 684, 689; 60 NW2d 907 (1953) the Court approved the following:

"The question as to what constitutes a nuisance is one of law for the court; but it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance *per se,* is a nuisance in fact."

Insofar as the trial judge's order embodies a determination that the toboggan run was not a nuisance *per se,* we agree. A toboggan run is intended for recreational enjoyment. If safely constructed and maintained, some relative danger is inherent in the activity. Such danger creates excitement and is a product of many sports activities.

Compare the following situations where our Supreme Court has decided there is no nuisance *per se.* Exculpated structures include incinerators,[2] public fishing sites,[3] parks used for football,[4] airports,[5] fuel docks,[6] auto junkyards,[7] and drive-in movie theaters.[8] In addition:

---

[2] *Sommers v Detroit,* 284 Mich 67; 278 NW 767 (1938).

[3] *Gableman v Dept. of Conservation,* 309 Mich 416; 15 NW2d 689 (1944).

[4] *Briggs v Grand Rapids,* 261 Mich 11; 245 NW 555 (1932).

[5] *Warren Township School District v Detroit,* 308 Mich 460; 14 NW2d 134 (1944).

"During recent years we have had occasion to consider the subject of nuisances *per se*. The following cases were considered and declared not to be nuisances *per se:* a lumber yard and planing mill, *Mackenzie v Frank M. Pauli Co,* 207 Mich 456 [174 NW 161]; 6 ALR 1305 (1919); a public dance hall, *People v Schoonmaker,* 241 Mich 177 [216 NW 456 (1927)]; a stable where horses are kept, *Shimberg v Risdon Creamery Co,* 215 Mich 94 [183 NW 780 (1921)]; the business of selling and servicing automobiles, *Lansing v Perry,* 216 Mich 23 [184 NW 473 (1921)]; a gasoline filling station, *Sandenburgh v Michigamme Oil Co,* 249 Mich 372 [228 NW 707 (1930)]; a dry cleaning plant, *Burdick v Stebbins,* 250 Mich 665 [231 NW 57 (1930)]; a small coal yard, *Daugherty v Ward,* 240 Mich 501 [215 NW 526 (1927)]; a commercial garage, *Moore v Johnson,* 245 Mich 173 [222 NW 120 (1928)]." *Sommers v Detroit,* 284 Mich 67, 71; 278 NW 767, 768 (1938).

As to whether plaintiff has properly pleaded a claim that the toboggan run was a nuisance in fact, we find the following language from *Buckeye Union Fire Insurance Co v Michigan,* 383 Mich 630, 634–635, 636; 178 NW2d 476, 479, 480 (1970) instructive:

"The term 'nuisance' has come to have significance in the law in a variety of meanings. It is often associated with loud noises or objectionable odors, or with some types of interference with the use and enjoyment of public places (a public highway, public park, or navigable river), or the unlicensed practice of a profession, or condition which endangers the health or safety of the public, or involves an invasion of an interest in the use and enjoyment of land. Such a wide diversification of

[6] *McMorran v Cleveland-Cliffs Iron Co,* 253 Mich 65; 234 NW 163 (1931).

[7] *Perry Mount Park Cemetery Association v Netzel,* 274 Mich 97; 264 NW 303 (1936).

[8] *Bzovi v Livonia,* 350 Mich 489; 87 NW2d 110 (1957).

meaning has led to confusion in determining liability or nonliability.

\* \* \*

"Primarily, nuisance is a condition. Liability is not predicated on tortious conduct through action or inaction on the part of those responsible for the condition. Nuisance may result from want of due care (like a hole in a highway), but may still exist as a dangerous, offensive, or hazardous condition even with the best of care."

We believe that the complaint sufficiently alleges a nuisance in fact as that term is described in *Buckeye, supra.* We now turn to the contention of plaintiffs that nuisances in fact are actionable despite the blockade of immunity when personal injuries result. Defendant claims that only nuisances which interfere with real property interests may survive governmental immunity.

In support of their claim that "nuisance" is an historically recognized exception to governmental immunity, plaintiffs cite *Pennoyer v Saginaw,* 8 Mich 534 (1860), *Cubit v O'Dett,* 51 Mich 347; 16 NW 679 (1883), *Ashley v Port Huron,* 35 Mich 296; 24 Am R 552(1877), *Attorney General v Grand Rapids,* 175 Mich 503; 141 NW 890 (1913), and *Birchard v Lansing Board of Health,* 204 Mich 284; 169 NW 901; 4 ALR 990 (1918). All are distinguishable in that they involve dangers to the health of the public and threats to the real property interests of members of the community. All involve classical nuisances, and any general language about nuisance must be viewed in light of the historical fact that at the time those cases were decided the broadened definition of nuisance under which plaintiffs herein claim refuge had not yet found its way into Michigan jurisprudence.

The rationale of the cited cases was not, as

plaintiffs claim, that anything that could be denominated nuisance survived governmental immunity. The true rationale is revealed by Justice COOLEY in *Ashley v Port Huron,* 35 Mich 296, 301; 24 Am R 552 (1877):

"The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances then it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other."

Two cases where personal injuries were found actionable despite immunity, *Ferris v Detroit Board of Education,* 122 Mich 315; 81 NW 98 (1899), and *Pound v Garden City School District,* 372 Mich 499; 127 NW2d 390 (1964), are closest to the instant case. In both of those cases, the personal injury resulted from the direct trespassory act of the municipality in allowing water to drain from its property onto other premises. The cases allow recovery because of governmental misuse of land in a manner which disparages the real property rights of another.

In *Ferris v Detroit Board of Education, supra,* our Supreme Court said (122 Mich 315, 319):

"The cause of action is not a neglect in the performance of a corporate duty rendering a public work unfit for the purposes for which it was intended, but the doing of a wrongful act, causing a direct injury to the person of the plaintiff, while outside the limits of the defendant's premises."

Interpreting *Ferris,* the Court in *Pound v Garden City School District, supra,* said:

"In *Ferris,* defendant's wrongful act was the construction of a building in such a manner that ice and snow fell upon plaintiff's premises. In these cases of Pound, plaintiffs have alleged defendant's wrongful act to be the construction of its building in such a manner that water flowed across the public sidewalk and caused a dangerously icy condition. Plaintiffs' declarations allege facts similar enough to those in *Ferris* to meet that case's criterion of 'a direct injury to the person of the plaintiff, while outside the limits of the defendant's premises.' We hold, therefore, that plaintiffs' declarations were sufficient to state a cause of action to which the defense of governmental immunity may not be interposed. To hold otherwise would be to establish a distinction between a plaintiff who is directly injured while upon his own premises by the wrongful act of defendant and another plaintiff who is likewise directly injured in a place, such as a public way, where he has a right to be and which is not subject to the authority of defendant. Such a distinction would be without justification in logic or public policy.

"Defendant cites several cases which have sustained the defense of governmental immunity to actions for tortious injury, but in those cases the injury which plaintiff sustained did not occur, as in *Ferris* and Pound, 'outside the limits of the defendant's premises' but rather occurred in areas subject to the authority of defendants." [fn omitted.] 372 Mich at 501–502.

Then came *Buckeye, supra.* In part I of the Supreme Court's opinion, it took great lengths to

show that a claim, on its face appearing to charge negligence, might also be deemed to allege a nuisance cause of action. The Court concluded in Part III that, where the state permitted a nuisance which caused the destruction of buildings insured by plaintiffs, governmental immunity did not bar suit. We do not read *Buckeye* for the proposition that any nuisance is actionable. We read *Buckeye* for the proposition that the governmental immunity statutes are subject to constitutional provisions such as those in effect at the time of the fire involved in *Buckeye*. Article 13, § 1, of the Constitution of 1908 provided:

"Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law."

The present provision, Const 1963, art 10, § 2, provides:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record."

After a careful reading of *Buckeye, supra,* we are convinced that nuisances in fact do not survive an otherwise proper claim of governmental immunity. As was said in *McDowell v State Highway Commissioner,* 365 Mich 268, 271; 112 NW2d 491, 492–493 (1961):

" 'So far as the State itself is concerned, the doctrine of sovereign immunity as it presently exists in Michigan is a creature of the legislature. The doctrine has

been modified by the legislature, abolished by the legislature, re-established by the legislature, and further modified by the legislature.'

"The judiciary has no right or power to repeal statutes. As said by the attorney general, the legislature has willed that the present defendants be and remain immune from liability for torts such as these plaintiffs have alleged. There they must stand; legally, until the legislature wills to the contrary."

*McDowell* also involved what plaintiff sought to characterize as a public nuisance. The Supreme Court upheld the dismissal of the complaint. Another attempt to circumvent governmental immunity by couching the action in "nuisance" terms occurred in *McCann v Michigan,* 47 Mich App 326; 209 NW2d 456 (1973), *lv to app granted,* 390 Mich 765 (1973), there this Court said (47 Mich App 326, 334):

"Although plaintiff's complaint sounds in tort, perhaps tortious interference with economic relations and defamation, he has made valiant attempts to argue for the first time on appeal that his cause of action really goes to a state-created nuisance. The origin of nuisance exception seems to be that the creation of the nuisance amounts to a taking of property or alternatively that the government as proprietor of land is subject to the same responsibilities as private landowners. Prosser, Law of Torts (3d ed), § 125, p 1009. There are, however, no conflicting real property interests in the case at bar. We grant that the term 'nuisance' encompasses a multitude of evils, but we decline to seize upon the 'catchword as a substitute for any analysis of a problem.' Prosser, § 87, p 592. Having found that one effect of 1970 PA 155 was to immunize the state from liability for the intentional as well as the negligent tortious acts of its employees, subject to certain legislative and judicial exceptions, and that plaintiff does not come within any of these exceptions, we cannot subvert this finding merely by a change of labels. We are constrained to

hold that plaintiff has no tort remedy against the State of Michigan."

We can only add our agreement with what was said by another panel of this Court in *Stremler v Department of State Highways,* 58 Mich App 620, 630;—NW2d — (1975):

"Much of plaintiff's argument is based upon *Buckeye Union Fire Ins Co v Michigan,* 383 Mich 630, 644; 178 NW2d 476, 483 (1970). Liability in that case was founded upon nuisance *and* a taking of private property without just compensation. The Court said that the state had permitted a nuisance to continue so as to interfere with and damage the property of plaintiff. The Court said: 'There is no sovereign immunity applicable to a situation of nuisance *as we have in this case'.* (Emphasis supplied.) Of *Buckeye,* this Court said in *Kelley v East Lansing,* 50 Mich App 511, 513; 213 NW2d 557, 558 (1973): 'The *Buckeye* case recognizes an exception from the sovereign immunity statute for a nuisance which contravenes the constitutional prohibition against the taking of property without just compensation'. *Cf.* Cooperrider, Annual Survey of Michigan Law—Torts, 18 Wayne L Rev 503, 521 (1972). We think that a fair reading of *Buckeye,* and proper interpretation thereof, discloses that the case may be limited to situations where a public nuisance has resulted in the taking of private property without just compensation."

The claim that governmental immunity offends the equal protection clause is meritless. *Kriger v South Oakland County Mutual Aid Pact,* 49 Mich App 7; 211 NW2d 228 (1973), *Snow v Freeman,* 55 Mich App 84; 222 NW2d 43 (1974). The statutory scheme of assuming liability in certain specific situations has the modicum of rationality necessary to survive constitutional attack. *Anderson v Detroit,* 54 Mich App 496; 221 NW2d 168 (1974).

Affirmed.