Cooley, Ch. J.:
The action in this case was instituted to recover damages for an injury caused to the house of plaintiff by the cutting of a sewer under the direction of the city authorities, and under city legislation the validity of which is not disputed. The necessary result of cutting the sewer, the plaintiff claims, was, to collect and. throw large quantities of water upon his premises which otherwise would not have flowed upon them; and it is for an injury thereby caused that he sues. The evidence offered on the part of the plaintiff tended to establish the case he declared upon, but the court instructed the jury that though they should find the facts to be as the plaintiff claimed, they must still return a verdict for the defendant. The ground of this decision, as we understand it, was, that the city, in ordering the construction of the sewer and in constructing it, was acting in the exercise of its legislative and discretionary *282 authority, and was consequently exempt from any liability to persons who might happen to be injured. That is the ground that is assumed by counsel for the city in this court, and it is supposed to be the ground on which the case was decided in the court below.
In Pontiac v. Carter, 32 Mich., 164, the question of the liability of a municipal corporation for an injury resulting from an exercise of its legislative powers was considered, and it was denied that any liability could arise so long as the corporation confined itself within the limits of its jurisdiction. That was a case of an incidental injury to property caused by the grading of a street. The plaintiff’s premises were in no way invaded, but they were rendered less valuable by the grading, and there was this peculiar *hardship in the case, that the injury was mainly or wholly owing to the fact that the plaintiff’s dwelling had been erected with reference to a grade previously established and now changed. In the subsequent case of City of Detroit v. Beckman, 34 Mich., 125, the same doctrine was reaffirmed. That was a case of injury by being overturned in a street in consequence of what was claimed to be an insufficient covering of a sewer at a point where two streets crossed each other. It was counted upon as a case of negligence, but the negligence consisted only in this, that the city had failed to provide for covering the sewer at the crossing of a street for such a width as a proper regard for the safety of people passing along the street would require. If this case is found to be within the principle of the cases referred to, the ruling below must be sustained, and that, we think, is the only question we have occasion to discuss.
The cases that bear upon the precise point now involved are numerous. In Proprietors of Locks, etc., v. Lowell, 7 Gray, 223, it was held that a city was liable in an action of tort for draining water through sewers and drains into a canal owned by a private corpoi’ation, thereby causing injury to the canai; the conclusion being planted on the right of the corporation “to an unmolested enjoyment of the property.” In Franklin v. Fisk, 13 Allen, 211, it is said by Chapman, J.: “When highways are established they are located by the' public authorities *283 with exactness, and the easement of the public, which consists of the right to make them safe and convenient for travelers, and to use them for public travel, does not extend beyond the limit of the location. A surveyor of highways who fells a tree upon the adjoining land extra mam, is a trespasser (citing Elder v. Bemis, 2 Met., 299). Neither his office nor the existence of the highway gives him any authority to meddle with the land outside the limits of the highway.” In Haskell v. New Bedford, 108 Mass., 208, a city was held liable to the owner of a private dock into which, to his injury, the mud and filth from its sewer was discharged. In Wilson v. New *York, 1 Denio, 595, on facts substantially like those in the present case, it was denied that plaintiff had any redress against the city. This decision was afterwards questioned in the same court ( Weet v. Brockport, 16 N.Y., 161, 170, note), and in some other cases to which reference will be made further on. In Lacour v. New York, 3 Duer, 406, it was decided that' a municipal corporation in the exercise of its authority over its property was as much bound to manage and use it so as to produce no injury to others as would be an individual owner, and that if the necessary result of an excavation in a public street was to injure the buildings on adjoining ground, the corporation must respond for such injury. In Conrad v. Ithaca, 16 N. Y., 158, a municipal corporation was held -liable to one whose building was carried away in consequence of the negligent construction of a bridge by the corporation over a stream fio wing through it. In Rochester White Lead Co. v. Rochester, 3 N.Y., 463, the city was made to respond in damages for flooding private premises with waters gathered in a sewer. This case is commented on in Mills v. Brooklyn, 32 N.Y., 489, and distinguished from one in which the injury complained of arose from the insufficiency of a sewer which was constructed in accordance with the plan determined upon. Obviously the complaint in that case was of the legislation itself, and of incidental injuries which it did not sufficiently j>rovide against. The like injuries might result from a failure to construct any sewer whatever; but clearly no action could be sustained for a mere neglect to exercise a discretionary authority. — Corn- *284 pare Smith v. Mayor, etc., 6 N. Y. Sup. Ct. (T. & C.), 685; 4 Hun, 637; Nims v. Mayor, etc., 59 N. Y., 500. Cases of flooding lands by neglect to keep sewers in repair, of which Barton v. Syracuse, 37 Barb., 292, and 36 N. Y., 54, is an instance, are passed by, inasmuch as it is not disputed by counsel for the defendant in this case that for negligent injuries of that description the corporation would be responsible. Those cases are supposed by counsel to be distinguished from the *one before us in this: that here the neglect complained of was only of a failure to exercise a legislative function, and thereby provide the means for carrying off the water which the sewer threw upon- the plaintiff’s premises. The distinction is, that the obligation to establish and open sewers is a legislative duty, while the obligation to keep them in repair is ministerial. But it is not strictly the failure to construct sewers to carry off the water that is complained off in this case; it is of the positive act of casting water upon the plaintiff’s premises by the sewer already constructed.
An action like the one at bar was sustained in Nevins v. Peoria, 41 Ill., 502; Aurora v. Gillett, 56 Ill., 132; Aurora v. Reed, 57 Ill., 30; Alton v. Hope, 68 Ill., 167; Jacksonville v. Lambert, 62 Ill., 519. The same is true of Pettigrew v. Evansville, 25 Wis., 223, where Dixon, Oh. J., is at some pains to distinguish the case from one of merely incidental injuries. The case of Vincennes v. Richards, 23 Ind., 381, appears by the report to have turned on this distinction; and see Cotes v. Davenport, 9 Iowa, 227. The doctrine of the foregoing cases is approved by Judge Dillon in his treatise on municipal corporations, Vol. 2, p. 799, note, where several Upper Canada cases are cited in its support. We refer also to Merrifield v. Worcester, 110 Mass., 216, where the same distinction is somewhat considered by Wells, J. In St. Peter v. Denison, 58 N. Y., 416, the action was against a contractor with the state for the enlargement of the canal, who in blasting rock had caused an injury to the plaintiff while the latter was employed on other premises in the vicinity. The defendant claimed the same exemption which the state would have had under the same circumstances. Conceding that he might stand in the *285 place of the state, the court held he was not entitled to protection. Even the state, it was said, could not intrude upon the lawful possession of a citizen. The case of incidental injuries, where the actor confined himself to the premises where he had a right to work, was considered and distintinguished, and the clear liability of the *defendant where the injury was accomplished by an actual invasion of another’s premises was affirmed.
It is very manifest from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner’s possession. His property right is appropriated in the one case as much as in the other.— Pumpelly v. Green Bay Co., 13 Wall., 166; Arimond v. Green Bay, etc., Co., 31 Wis., 316; Eaton v. B. C. & M. R. R. Co., 51 N. H., 504.
A like excess of jurisdiction appears when in the exercise of its ¡lowers a municipal corporation creates a nuisance to the injury of an individual. The doctrine of liability in such cases is familiar, and was acted upon in Pennoyer v. Saginaw, 8 Mich., 534.
The recent case of Rowe v. Portsmouth, decided by the *286 supreme court of New Hampshire, and not yet found in the regular reports, is in accord with the views we have expressed.
—See Am. Law Times and Rep., Yol. 3,p. 482.
*It follows that the judgment must be reversed, with costs, and a new trial ordered.
The other justices concurred.