## BARGER v. CITY OF HICKORY.

(Filed May 27, 1902.)

1. MUNICIPAL CORPORATIONS—*Sewer—Nuisance—Negligence— Damages.*

> Where, in an action against a city for a nuisance caused by a sewer, put in some years before by the employees of the city, the damages claimed arise solely from its use by a private person, the city is not liable.

2. MUNICIPAL CORPORATIONS—*Ultra Vires—Nuisance.*

> The putting in of a sewer by a board of aldermen of a city for the use of a private person, unauthorized by the charter, is *ultra vires,* and the aldermen individually, and not the city, are liable for a nuisance arising therefrom.

DOUGLAS, J., dissenting.

ACTION by Simeon Barger against the city of Hickory, heard by Judge *W. A. Hoke,* and a jury, at February Term, 1902, of the Superior Court of CATAWBA County. From a judgment for the plaintiff, the defendant appealed.

No counsel for the plaintiff.
*Self & Whitener* and *Thos. M. Hufham,* for the defendant.

CLARK, J. This action, begun before a Justice of the Peace, is for damages from a nuisance caused by a sewer leading from the Hickory Inn, a private enterprise. The plaintiff testified that there was no drainage of filth through the pipe from the city, but only from the Hickory Inn—"nothing bothers witness that comes from city, and only damage done to witness is the drainage that comes from Hickory Inn." It is apparent from this that the plaintiff's remedy is against the owners of Hickory Inn for damages, or by injunction, or both, and the Court should have granted the motion to nonsuit plaintiff at the close of the evidence. In the language of the late Chief Justice Pearson, the plaintiff "has the wrong sow by the ear."

The only evidence offered against the city is that some of its employees, with authority of its Board of Aldermen, put in, or aided to construct, the sewer years ago. But the damage arises not from putting the sewer in, but from its use now by the Hickory Inn. Besides, the putting in a sewer to the hotel was an *ultra vires* act of the Aldermen, unauthorized by the charter of the city, and if that were the cause of action, the liability, if any, would rest upon the Aldermen individually and not upon the taxpayers of the city, from whom the Aldermen had no authority to act in putting in a sewer to a hotel in which the city had no interest. Dillon Mun. Corp. (4th Ed.), Secs. 89-92, 457, 969-970, the last-named sections more especially.

Error.

DOUGLAS, J., dissenting. I concur in the opinion of the Court as to the individual liability of the Aldermen, but I do not see why the city of Hickory should not also be liable under the circumstances of this case. It appears that some years ago the Board of Aldermen, in order to provide for the sewerage from Hickory Inn, constructed a sewer through the hotel lot, across the street, and through the lots of several parties, including the plaintiff, into a branch. A part of this sewer was constructed of terra-cotta pipes, and the remainder of wooden boxes or trunks. These latter naturally rotted out in course of time, causing the dirt to cave in and ponding the sewage on the plaintiff's land, thus creating an intolerable nuisance. This nuisance is the direct and natural result of the improper construction of the sewer by the city authorities, as well as their failure to keep it in proper repair. In other words, the city created the nuisance.

The opinion of the Court says, quoting Chief Justice PEARSON, that the plaintiff "has the wrong sow by the ear." If a man's garden is rooted up and destroyed, he has the right to

take some sow by the ear, and it seems to me that the proper sow to catch is the sow that has done the rooting.

The Court cites Sections 969 and 970 of Dillon on Municipal Corporations, but it seems to me that it is the following Section (971) which directly applies to the case at bar. This Section says: "Cases such as those thus mentioned are to be *distinguished from others* which resemble them in the circumstance of relating to wrongful acts, but which arise out of matters or transactions *within the general powers* of the corporation, and in respect of which there may be a corporate liability. Thus, if in exercising its power to open or improve streets, or to make drains and sewers, the agents or officers of a municipal corporation, under its authority or direction, *commit a trespass upon or take possession of private property* without complying with the charter or statute, the corporation is liable in damages therefor. In such cases, also, an action will lie against a city corporation by the owner of land through which its agents have unlawfully made a sewer, or for trees destroyed and injury done by them." In Section 1045 it is said: *  *  * "And, therefore, the city is liable for an injury to the premises of the plaintiff by flooding it with water, not only where such injury is caused by neglect to keep the sewer in repair, but as well where it is the negligent or necessary result of the constructing of the sewer." In both sections the italics are those of the author.

In Wood's Law of Nuisance, Sec. 748, it is said: "A municipal corporation is liable to indictment for a public nuisance maintained by it, and is also liable for damages at the suit of an individual who sustains special damages therefrom."

In *Harper v. City of Milwaukee,* 30 Wis., 365, 372, the Court says: "The general rule of law is that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may

be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible in any case in which, under like circumstances, an action could be maintained against an individual." Numerous authorities are cited.

In *Ashley v. Port Huron*, 35 Mich., 296, 301, in an able and elaborate opinion by Chief Justice Cooley, the Court says: "It is very manifest from this reference to authorities that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the nature of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right-of-way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction. A municipal charter never gives and never could give authority to appropriate the freehold of a citizen without compensation, whether it be done through an actual taking of it for streets or buildings, or by flooding it so as to interfere with the owner's possession. His property right is appropriated in the one case as much as in the other."

Among the cases cited by Judge Cooley is *Pumpelly v. Green Bay Co.*, 13 Wallace, 166, where an elaborate opinion is delivered by Justice Miller.

The recovery in the case at bar was only $25, and I am at a loss to understand why the city did not abate the nuisance,

which could apparently have been done at little cost, instead of incurring the expense of defending the case through all the Courts.   It is evident that the plaintiff has suffered a substantial injury, for which some one should be liable, and I see no reason why the city, whose agents created the nuisance and caused the damage, should not be liable as a joint tort feasor.