*In re* CLAIM OF MOROSS AGAINST HILLSDALE COUNTY.

1. HIGHWAYS AND STREETS — COUNTIES CONSTRUCTING HIGHWAYS PERFORM GOVERNMENTAL FUNCTION—LIABLE ONLY TO TRAVELERS UNDER STATUTE.

In the construction, maintenance, and repair of highways, counties are discharging governmental functions, and, in the absence of statute, are immune from liability for negligence of themselves or their agents in the carrying on of such work, although, under 1 Comp. Laws 1915, § 4367, they are liable to travelers for failure to keep highways under their care and control in safe condition for travel.

2. SAME—BRIDGES AND CULVERTS PARTS OF ROAD.

Under Act No. 354, Pub. Acts 1925, § 1, bridges and culverts are in all respects parts of the road upon which they are located.

3. MUNICIPAL CORPORATIONS—DISTINCTION BETWEEN LIABILITY OF CITIES AND COUNTIES FOR NEGLIGENCE.

There is a distinction between the liability of cities, which

---

[1]Highways, 29 C. J. § 440; [2]Id., 29 C. J. § 1; [3]Counties, 15 C. J. § 272 (Anno); 39 L. R. A. 33; L. R. A. 1916B, 1263; 7 R. C. L. 957; 2 R. C. L. Supp. 482; 4 R. C. L. Supp. 503; 5 R. C. L. Supp. 431; 6 R. C. L. Supp. 467.

are voluntary municipal corporations, chartered upon request of the inhabitants, and that of counties, which are involuntarily established agencies and instrumentalities of the State.

4. HIGHWAYS AND STREETS—REMOVAL OF COFFERDAM GOVERNMENTAL FUNCTION.

Where a board of county road commissioners, in constructing a spillway and bridge across a road, built a cofferdam to hold back the water, its removal, after the work was finished, was part of the construction work, and, therefore, was the exercise of a governmental function for which the county is not liable, although the board and its agents were guilty of negligence, resulting in wrecking the waterway and causing serious damage to adjoining mill property.

5. SAME—REMOVAL OF WRECKED CONCRETE GOVERNMENTAL FUNCTION.

Nor is the county liable for the negligent use of dynamite by said board and its agents in removing the wrecked cement work preparatory to rebuilding the spillway and bridge across the road; said negligence also arising out of the performance of a governmental function.

6. SAME—NO LIABILITY CREATED BY CONTRACT TO PERFORM GOVERNMENTAL FUNCTION.

A contract between mill owners and the board of county road commissioners, whereby the latter undertook, for a consideration, to build a spillway and bridge across a public highway, which, under Act No. 354, Pub. Acts 1925, § 27, it was its duty to build in case the mill owners refused to do so, does not have the effect of imposing a liability upon the county for the negligence of the board or its agents in constructing same, where otherwise there was none.

Error to Hillsdale; Johnson (Clayton C.), J., presiding.    Submitted October 7, 1927.    (Docket No. 52.)    Decided April 3, 1928.    Rehearing denied June 22, 1928.

E. A. Moross and another presented a claim against the county of Hillsdale for damages caused by negli-

---

[4]Highways, 29 C. J. § 355.

gence of the board of county road commissioners. The claim was disallowed by the board of supervisors, and plaintiffs appealed to the circuit court. There was an order granting a motion to dismiss. Plaintiffs bring error. Affirmed.

*John Simpson* (*A. F. Freeman*, of counsel), for appellants.

*G. F. Lewis* and *B. D. Chandler*, for appellee.

WIEST, J. November 30, 1926, plaintiffs filed with the board of supervisors of Hillsdale county a statement of claim for damages. The board rejected the claim; plaintiffs appealed to the circuit court; the court sustained a motion in the nature of a demurrer to the statement and ordered dismissal of the cause. The liability of the county is pressed by writ of error.

Briefly, the plaintiffs' statement of claim alleges:

They are the owners of considerable land in Hillsdale county, on which they have and use valuable water rights in the operation of a flour mill, feed mill, buckwheat mill, and hydro-electric plant. Alongside the flour mill, in a meandering easterly direction, runs a county road under the jurisdiction of the board of county road commissioners. Across the road from the mill is Mosher lake. Under the road from the lake to the mill ground ran a sluice or spillway.

In July, 1926, the board of county road commissioners undertook to repair the road and rebuild the bridge adjacent to the mill. The board and plaintiffs entered into a contract on July 24th by which the plaintiffs paid the board $250, and the latter agreed to rebuild the spillway, six feet by twelve feet, of reinforced concrete, the plaintiffs to construct their own gates or flashboards. The contract further provided that the plaintiffs

"hereby release the county of Hillsdale, Michigan, and the said party of the first part from all damages or

claims of any kind or nature that may result from the constructing of said sluice or waterway to their property or water rights."

The board proceeded with the work, and, in the operation, built a cofferdam in the lake, composed entirely of earth. When the bridge was completed and ready for use, the agents of the board opened the gates to let the earthen cofferdam wash through the sluice. The force of rushing water became too strong to withstand, and the whole construction of the sluiceway collapsed. The plaintiffs set up in detail many respects in which the construction was inadequate and negligent. It is charged that large quantities of earth washed into the tailrace of plaintiffs' plant and produced heavy damage to the mill and its operations. Later, it is stated, in an effort to clear the debris and remove the broken pieces of concrete, the county workmen used dynamite so negligently as to cast large stones against the buildings of plaintiffs, broke windows and roofs and otherwise caused them great injury. It is further claimed that the county workmen broke down the levee and dykes erected for the purpose of impounding the waters of the Kalamazoo river. Plaintiffs claim damages of $20,000.

The sole question is whether the county of Hillsdale is liable for the acts and negligence of its officers, agents, and servants in such a situation. Consideration of this cause may properly begin with a reference to *Gunther* v. *Cheboygan County Road Com'rs,* 225 Mich. 619, in which this court, after an exhaustive review of the authorities, held that, in the construction, maintenance, and repair of highways, the county is discharging a governmental function, and, in the absence of statute, is immune from liability for its negligence or that of its agents in the carrying on of such work.

Bridges and culverts are in all respects a part of

the road upon which they are located. Act No. 354, Pub. Acts 1925, § 1.

By statute, counties are declared responsible to travelers for injuries sustained on their highways which are negligently unsafe for travel. *McCaul* v. *County of Kent*, 231 Mich. 681. But the distinction between the statutory liability for failure to keep highways in safe condition for travel and the immunity from liability in the construction and maintenance of highways as a governmental function is specifically pointed out in *Longstreet* v. *County of Mecosta*, 228 Mich. 543, and must be kept in mind.

Plaintiffs cite a number of cases in which cities have been held liable for damages occasioned in the construction of public works. The distinction between the liability of cities, which are voluntary municipal corporations, chartered upon request of the inhabitants, and that of counties, which are involuntarily established agencies and instrumentalities of the State, is pointed out in the *Gunther Case*. A considerable number of authorities in other States may also be found holding a county liable for injuries proceeding out of the negligent exercise of governmental functions. Upon such liability there is conflict. For a review of authorities holding divergent views, see notes to 39 L. R. A. 63; 21 L. R. A. (N. S.) 209. However, a discussion of the city cases and of the conflict in the county decisions would be profitless here because, as pointed out in the *Gunther Case,* the holding of nonliability of counties for governmental acts has been consistent throughout the existence of this court. It must be accepted as the settled law of the State.

It is also established by our decisions that the construction, maintenance, and repair of a highway are governmental functions. Therefore, it merely remains to inquire whether the acts complained of at bar were done in the building of a bridge, a part of

the highway, and if not, what governmental or private function of the county they touched. Of course, if they were not done on county business at all, the defendant cannot be held liable for them.

Counsel for plaintiffs urge that the doctrine of governmental function ceased its operation when the bridge was open to traffic, and that it does not apply to the subsequent acts of running the cofferdam earth through the sluice nor to the blasting with dynamite. Counsel, however, neglected to suggest to what private function of the county those subsequent acts were relevant.

Obviously, the removal of the cofferdam was a part of the construction of the highway, as the removal of scaffolding would be a part of the building of a house or the drawing of basting threads a part of tailoring a suit of clothes. A construction job cannot be said to be completed until it is in finished form, and the temporary construction work removed. Especially is this true of the cofferdam at bar because the sluice was built to permit the water to flow across the road and the construction was not complete until the water had been freed by the removal of the restraining work and was running under the bridge.

The removal of the wrecked cement work was necessary to the construction of the highway and was as much an integral part of the building of the bridge as would be the removal of boulders from the bridge site.

The purpose and the manner of opening the levee and dykes are not shown in the statement of claim. From the argument of counsel it would appear that they were done to release the water pressure during the construction of the work. The acts of removing the cofferdam and the cement and the opening of the levee were all related solely to the building of the bridge, a governmental function. They had no connection with any other county activity. The injury to plaintiffs

occurred because the acts were done in a negligent manner. The situation presents just the sort of negligent acts from whose consequences the above decisions hold that the county is immune.

The contract between the plaintiffs and the board of county road commissioners can have no effect upon the liability of the county. Under Act No. 354, Pub. Acts 1925, § 27, the duty was incumbent upon the plaintiffs to construct the bridge. In case of their failure to do so the duty devolved upon the board. There is no authority in the statute for such a contract. The board, by making it, cannot usurp the power of the legislature which alone has the authority to impose liability upon the county. Plaintiffs have undoubtedly suffered great damage through the carelessness of the board of road commissioners, but the law leaves them without remedy.

In our opinion, the statement of claim does not set up a cause of action against the defendant, the county of Hillsdale, and the order of the circuit court dismissing the cause is affirmed, with costs to defendant.

FELLOWS, CLARK, MCDONALD, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN and the late Justices SNOW and BIRD took no part in this decision.