HERRO *v.* CHIPPEWA COUNTY ROAD COMMISSIONERS.

1. PLEADING—MOTION TO DISMISS—APPEAL—AVERMENTS ACCEPTED
   AS TRUE.

   Essential portions of a declaration are accepted as true for
   the purpose of review of an order granting defendant's motion
   to dismiss.

2. MUNICIPAL CORPORATIONS—TRESPASS—NEGLIGENCE.

   A municipal corporation is not exempt from liability to an in-
   dividual for direct injuries accomplished by a corporate act
   which is in the nature of a trespass upon him, although it
   would not be liable for negligent injuries to individuals
   arising from defective plans of construction of public works
   or failure to keep the same in repair.

3. SAME—FLOODING—TRESPASS.

   The construction of a drain by a municipal corporation in such
   a manner that the flooding of a plaintiff's lands must be a
   ' necessary result is no more justifiable than a direct injury as
   each is a trespass.

4. WATERS AND WATERCOURSES—ARTIFICIAL RESERVOIR.

   A governmental agency which or a person who collects water in
   an artificial reservoir has an obligation to use care proportioned
   to the danger of injury from the escape.

5. COUNTIES—STATES—GOVERNMENTAL IMMUNITY—TRESPASS.

   Governmental immunity is not a defense which a county or the
   State may interpose against liability for an unlawful intrusion

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading §§ 330–334.
[2] 37 Am Jur, Municipal Corporations § 139; 38 Am Jur, Municipal
    Corporations § 571 *et seq.*
[3] 38 Am Jur, Municipal Corporations § 640.
[4] 56 Am Jur, Waters § 171.
    Liability for overflow or escape of water from reservoir, ditch, or
    artificial pond. 169 ALR 517.
[5] 49 Am Jur, States, Territories, and Dependencies § 91.
[6] 12 Am Jur, Constitutional Law § 651.
[7] 56 Am Jur, Waters § 162.

upon the lawful possession of a citizen, whether the intrusion be of long or short duration.

6. CONSTITUTIONAL LAW—TAKING OF PROPERTY—INVASION OF LAND.
   The invasion of real estate by superinduced water, earth, sand, or other material constitutes a taking within the meaning of the Constitution.

7. DEATH—DROWNING—COUNTY ROAD CONSTRUCTION PROJECT—ARTIFICIALLY IMPOUNDED WATER—NUISANCE—TRESPASS.
   Plaintiff, administrator of estate of decedent who was drowned when waters impounded by road construction project escaped and upended summer cottage, held, to have stated a cause of action in declaration averring facts showing that the road construction project was not made so that the artificially impounded water would not constitute a nuisance and would not trespass upon the land occupied by decedent (CL 1948, § 27.711 et seq.).

Appeal from Chippewa; Baldwin (George S.), J. Submitted November 7, 1962. (Docket Nos. 50–55, Calendar Nos. 49,576–49,581.) Decided December 3, 1962.

Case by Joseph G. Herro, administrator of the estate of Nancy Jean Herro, deceased, against the Board of County Road Commissioners for the County of Chippewa for damages under the death act as result of water, impounded excessively, washing away roadway and engulfing summer residence. Declaration dismissed on motion. Plaintiff appeals.

Various actions by Hal Smith, Joseph G. Herro in his own right, Donald A. Gocella, Thelma E. McKinnon, and Gordon L. Curtis and others, resulting from same circumstance, similarly dismissed on motions. Plaintiffs appeal. Stipulation filed that one opinion govern all submitted cases.

Reversed and remanded for entry of order denying motion to dismiss.

*Gillespie & LaRock* and *Platt & Platt,* for plaintiffs.

*Burney C. Veum,* for defendant.

BLACK, J.   This is a suit for wrongful death,* caused according to allegation by an actionable trespass consisting of the break-through flooding of certain private property and the complete destruction of a summer residence where, as plaintiff alleges, he and his decedent were visiting at the time of tragedy. It is alleged that, as a direct consequence of such trespass, the decedent died by drowning. The trespass was due, per allegation, to the dangerous and water-impounding nature of a certain road construction project which, by the defendant board of county road commissioners, had been done and completed some 20 months prior to the tragedy. On motion of the defendant board, assigning immunity from liability, plaintiff's declaration was dismissed with prejudice. Plaintiff appeals.

The essential portions of plaintiff's declaration, which according to rule we accept as true for the purpose of present review, are rather lengthy. Such being the case, and appellee having made no suggestion of insufficiency or inaccuracy thereof (see Court Rule No 67, § 2 [1945]†), we adopt and quote appellant's summary of such essential portions as same appears in his statement of facts.

"The sixth paragraph sets forth that Ranger road extended in a southerly direction from the intersection of Lakeshore road, that Lakeshore road extended easterly from such intersection and that Tower road intersected Lakeshore road easterly of the intersection of Ranger road and Lakeshore road

---

* See CL 1948, § 691.581 *et seq.* (Stat Ann and Stat Ann 1959 Cum Supp § 27.711 *et seq.*).—REPORTER.
† As amended, see 347 Mich xxii and 355 Mich xiv.—REPORTER.

and extended southeasterly, which roads created an area several acres in size, which was low, swampy land and that the drainage thereof was across, through or under Ranger road, approximately 400 feet south of the intersection of Lakeshore road and that water accumulated in this low, swampy area, which ran over Ranger road at different times of the year, which facts were known to the defendant.

"Paragraph 7 sets forth that during the fall of 1957, the defendant directed the removal of an 18-inch diameter culvert which was located approximately 400 feet southerly of the intersection of Ranger road and Lakeshore road and was under and extended through Ranger road and in place thereof, a 24-inch diameter culvert was installed which was for the purpose of relieving the backing up and impounding of said water and would permit said water, so impounded, to flow away; that at said point, Ranger road was increased in height by the addition of soil, stones and gravel, several feet, for the purpose of creating a dam to hold water which would accumulate in the area bound by Ranger, Lakeshore and Tower roads from overrunning Ranger road and thus interfere with traffic and during the summer of 1958 the road bed of Ranger road was blacktopped.

"Paragraph 8 sets forth that during April, 1959, there was considerable rainfall in the area involved and that the area bounded by Ranger, Lakeshore and Tower roads being the natural drainage location for several hundred or thousands of acres lying southerly, southeasterly and southwesterly of said area and that the low, swampy area bounded by said roads, was filled with water and that the 24-inch culvert located under Ranger road was not sufficient to carry off the water which was accumulating and that the water accumulated in the area bounded by Ranger, Lakeshore and Tower roads to a point considerably higher than it had ever been prior thereto, which large amount of impounded water created a terrific pressure against Ranger, Lakeshore and Tower roads and which facts were known to the defendant.

"Paragraph 9 sets forth that during the early part of May, 1959, water accumulated in the impounded area bounded by Ranger, Lakeshore and Tower roads to an amount greatly in excess of any amount previously accumulated and impounded in said area, which water created a terrific pressure against the embankments and/or roads holding the same, being Ranger, Lakeshore and Tower roads and because Ranger road had been reinforced and made stronger and higher, to withstand such pressure, Ranger road did not wash out nor did the water wash over the top of Ranger road and escape and that the 24-inch culvert could not carry the water away fast enough, which facts were known to the defendant; and that at approximately 6:30 o'clock in the morning of May 3, 1959, the water, being of such a pressure on the embankments and/or roads, holding the same, that a portion of Tower road, southerly of its intersection with Lakeshore road, gave way and was washed out by water escaping from the impounded area aforesaid and said water created a large hole several feet in depth and width in said road and said water continued in its own made course or bed, northeasterly towards Lake Superior and tore out and washed out a large portion of Lakeshore road, several feet in width and depth and entered upon real estate occupied by plaintiff's decedent located in Bay Mills township, described therein, upon which real estate was a summer residence occupied by plaintiff's decedent and the water, being of such force and violence that the same upended and hurled the summer cottage from its foundation into the hole or ravine caused by the escaping water and the building was torn apart by said waters and completely demolished and that plaintiff's decedent, being an occupant inside of said residence, on said property, was killed as thereafter set forth.

"Paragraph 10 sets forth that there was a duty on the part of defendant in so constructing and maintaining its roads and especially Ranger road and in collecting and impounding and causing water to back

up to provide proper and adequate culverts, drains and escape routes for the same, so that the impounded water thus artificially collected in such manner would not be a nuisance and would not trespass upon property in which your plaintiff's decedent was legally in occupancy and possession and it was defendant's further duty to plan and construct a culvert and system of culverts of sufficient size which would effectively drain away the water therein accumulated; and it was defendant's further duty to prevent the artificial creation of a dangerous body of water at a level above the level of the property occupied by plaintiff's decedent and to prevent the sudden discharge thereof in large and unnatural quantities on the person of plaintiff's decedent.

"Paragraph 11 sets forth that decedent attempted to remove herself from said upended building and that her feet became engulfed in sand; that the waters around decedent were rising and that decedent could not extricate her feet from the sand and that the water continued to rise slowly but surely upon the person of the decedent until said decedent's body, head, extended arm and hand were completely covered with said waters and said decedent did then and there die as result of drowning."

For reversal plaintiff relies particularly on *Ashley* v. *City of Port Huron*, 35 Mich 296 (24 Am Rep 552), and *Rogers* v. *Kent County Road Commissioners*, 319 Mich 661, 671. The *Ashley Case*, upon which the *Rogers Case* depends, is another one of Justice COOLEY's permanently surveyed landmarks. The conclusion reached, following careful analysis of eminent authority then extant, appears on page 301 of the report:

"It is very manifest from this reference to authorities, that they recognize in municipal corporations no exemption from responsibility where the injury an individual has received is a direct injury accomplished by a corporate act which is in the na-

ture of a trespass upon him. The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual. If the corporation send people with picks and spades to cut a street through it without first acquiring the right-of-way, it is liable for a tort; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result. The one is no more unjustifiable, and no more an actionable wrong, than the other. Each is a trespass, and in each instance the city exceeds its lawful jurisdiction."

*Ashley* was expressly followed in *Rice v. City of Flint,* 67 Mich 401, 403:

"For a direct act which causes water to flow upon the premises of another to his injury a municipality is responsible. A city has no more right to invade or cause the invasion of private property than an individual (citing authorities including *Ashley*).";

and again in *Seaman v. City of Marshall,* 116 Mich 327, 329, 330:

. "We are of the opinion that there may be a right of action where an injury results from a sewer, although built with all due care, and in strict conformity to the plan adopted by the council. Such liability is recognized where it is permitted to collect water and discharge it upon the lands of a private person, as said in *Defer v. City of Detroit,* 67 Mich 346, where this subject is considered, or, as held in *Rice v. City of Flint,* 67 Mich 401, where it backs up a drain and floods a cellar. See, also, *Ashley v. City of Port Huron,* 35 Mich 296, 301 (24 Am Rep 552).";

and again in *Ferris v. Board of Education of Detroit,* 122 Mich 315, 318:

"It is conceded by counsel for plaintiff that municipal corporations are not generally held liable, under

the common law, for negligent injuries to individuals arising from defective plans of construction of public works or failure to keep the same in repair; but it is contended that, where the injury is the result of the direct act or trespass of the municipality, it is liable, no matter whether acting in a public or private capacity. We are satisfied that counsel for plaintiff are right in this contention.";

and again in *Robinson* v. *Township of Wyoming,* 312 Mich 14, 22, 23, quoting *Ashley* and adding, from Cooley on Torts (2d ed), p 680:

· "According to all authorities, there is imposed upon a person who collects water in an artificial reservoir an obligation to use care 'proportioned to the danger of injury from the escape'."

Finally, in *Rogers, supra,* this conclusion was reached by majority vote (p 671):

"BOYLES, J. I agree with Mr. Justice BUSHNELL in affirming our previous opinion for reversal, but the case should be submitted to the jury on the ground that governmental immunity is not a defense which a county may interpose against liability for a continuing trespass. See *Ashley* v. *City of Port Huron,* 35 Mich 296 (24 Am Rep 552); *Ferris* v. *Board of Education of Detroit,* 122 Mich 315; *Robinson* v. *Township of Wyoming,* 312 Mich 14."

Turning now to the principal authorities relied upon by the defendant board of road commissioners. They are *Gunther* v. *Cheboygan County Road Commissioners,* 225 Mich 619; *Johnson* v. *Ontonagon County Road Commissioners,* 253 Mich 465; *In re Moross* v. *Hillsdale County,* 242 Mich 277; and *Maffei* v. *Berrien County,* 293 Mich 92. It is conceded that in each of these cases a broad rule of immunity from tort liability was declared in favor of the respectively involved counties and county boards. Yet

all are distinguishable from *Ashley's* rule for separate reasons.

So far as concerns *Gunther* and *Johnson,* neither poses any bar to plaintiff's cause. Each portrays a conventional suit for damages arising from negligent operation of a motor vehicle on a public highway. No right of recovery arising from trespass was or could have been pleaded.

*Moross* and *Maffei* are of different breed. Each —superficially at least—tends to support defendant's plea of immunity. In each, however, the careful reader will find that claimants Moross and plaintiffs Maffei planted (mistakenly it would seem) their respectively alleged rights of action upon the theory of actionable *negligence* rather than that of actionable *trespass.* Further, with respect to *Maffei,* the Court found in final assay that the defendant *county* was not liable for the pleaded tort of the nondefendant *drain commissioner. Maffei* holds (quoting syllabus 4):

"Since undertaking of drain commissioner in increasing draining capacity of upper drain without corresponding attention to lower drains which is alleged to have resulted in damage to plaintiffs' lands was action taken in performance of duties imposed by statute upon him and not upon the county, county would not be liable for his acts."

As for *Moross,* the Court bottomed decision on this final conclusion (pp 282, 283):

"The injury to plaintiffs occurred because the acts were done in a negligent manner. The situation presents just the sort of negligent acts from whose consequences the above decisions hold that the county is immune."

The distinguishing factors to which allusion has just been made are technical rather than substantial. Yet they account prima facie for the fact that

in *Moross* and *Maffei* the line of cases commencing with *Ashley* and concluding—then— with *Ferris* was not discussed; also for the fact that the common-law right of recovery for destructive water trespass, no matter who the public or private trespasser-flooder might be, was not mentioned. Thus *Moross* and *Maffei* are presently distinguishable, leaving intact these manifest conclusions:

The first is that—in Michigan—no city, village, township, county, or any administrative division thereof, has been held immune from liability for destructive flooding of private property occasioned by trespass, provided the trespass is pleaded and proved as in *Ashley* and like cases.

The second is that *Ashley,* having aligned the Court—just as it did 3 years earlier in the presently quoted *Jarvis Case*—with authorities like *Pumpelly* v. *Green Bay Co.,* 80 US (13 Wall) 166 (20 L ed 557), and *Eaton* v. *Boston, C. & M. R. Co.,* 51 NH 504 (12 Am Rep 147), stands, as before, for the proposition that even the State "could not intrude upon the lawful possession of a citizen" (p 300).

This is good law, and the undersigned vote to apply it in bar of the defendant board's plea for judgment of immunity. If the defendant is immune from liability, that immunity will arise from the same proof which upon trial would acquit a private defendant.

"The acts complained of are analogous to those in the case of *Ashley* v. *City of Port Huron,* 35 Mich 296 (24 Am Rep 552), and if, upon the trial, the facts developed show that the act complained of was committed by the defendant in the execution of a ministerial duty, or in the exercise of a wrongful act, by which plaintiff's premises were flooded by the water in the sewer being set back and discharged upon their premises through a sewer connection which they had a right to make and maintain, the

principles enunciated in the *Ashley, Case* will control this. The questions pertaining to the defendant's duty and liability in this respect should be determined upon the facts as established upon the trial. It is too early in the case to anticipate what those may be. We merely express our opinion at this time that the declaration discloses a cause of action." (*Defer* v. *City of Detroit,* 67 Mich 346, 350, 351.)

It is suggested finally that the *Rogers Case* is distinguishable from *Ashley's* rule on ground that in *Rogers* the defendant board's trespass continued from the spring removal of snow fence to the following month of July, at which time Mr. Rogers sustained his fatal injury; whereas in *Ashley,* likewise here and in *Robinson,* the trespass was comparatively sudden and (presumably) brought to termination within a short time. One is said to be an actionable "continuing" trespass; the other a mere and nonactionable trespass.

The alleged distinction does not hold up under scrutiny, there being no assignable reason for holding units of local government immune from liability for direct and destructive trespass and yet not immune from liability for continuing and similarily destructive trespass. Every substantial trespass continues long enough to do damage. Why should an unlawful trespass of damaging character, effected by a released head of water, be made actionable if slow and continued, and nonactionable if headlong to similar damaging result? The answer is that if—upon authority of *Ashley*—the trespass plaintiff has alleged stands actionable as against a plea of immunity, then it matters not that the continuity thereof was long or short in point of calendar time. Surely, if this declaration is truthful, the defendant's trespass (no matter when it started and how long it continued) lasted for 1 agonizing lifetime as, trapped by waterborne sand and debris,

Mrs. Herro saw and felt the trespasser's impound rise slowly around her until death by drowning ensued. And death is something more than "continuing." It is permanent so far as mortal judges are privileged to know.

If it were necessary to hold in avoidance of defendant's plea that the pleaded trespass was a "continuing" one, we would not hesitate to apply such brand. Neither would we hesitate holding, if the immediate case in scrutiny were that of the owner of the destroyed summer residence (just as the Court did in *Defnet* v. *City of Detroit,* 327 Mich 254, 258), that "The city [here the defendant board] cannot excuse its tortious taking of private property by invoking the shibboleth of governmental function." Such is however quite unnecessary to present decision; the point of which is that an otherwise actionable trespass affords no immunity from liability whether it be deemed "continuing" or not.

Conclusion: The linchpin of the Court's reasoning in *Ashley* may be found in the therein cited cases of *Pumpelly* v. *Green Bay Co., supra,* and *Eaton* v. *Boston, C. & M. R. Co., supra;* also in the preceding case of *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich 308.* With respect to *Pumpelly* the Court wrote (*Jarvis* at 324):

"And it may be difficult, and even impossible, to draw a definite and well defined line of separation between those injuries which are so direct and of such magnitude as to fall on one side of the line, and those which are so trivial or remote as to fall upon the other. But we concur in the views expressed by the supreme court of the United States in *Pumpelly* v. *Green Bay Co.,* 80 US (13 Wall) 181 (20 L ed 557), that there are many decisions 'which

* See extensive quotation of *Pumpelly* and *Jarvis* in *Vanderlip* v. *City of Grand Rapids,* 73 Mich 522, 535, 536 (3 LRA 247, 16 Am St Rep 597).

have gone to the uttermost limit of judicial construc-
tion' [in denying all liability for injuries on the
ground here claimed by the plaintiff in error] 'and
some of them beyond it, and that it remains true that
where real estate is actually invaded by superin-
duced water, earth, sand or other material,   *   *   *
it is a taking within the meaning of the Constitution.
And that this proposition is not in conflict with the
weight of judicial authority in this country, and
certainly not with sound principle.' I have care-
fully examined the cases referred to on both sides,
and all others within my reach upon this question,
most of which are collected, classified and carefully
distinguished in the masterly opinion of the su-
preme court of New Hampshire (given by Judge
Smith). And upon a careful examination and analy-
sis of the cases, I am prepared to say, not only that
the weight of judicial authority is not opposed to the
conclusion of the supreme court of the United States
in the case cited from 13 Wallace, but that the over-
whelming weight of judicial authority in the Ameri-
can States sustains that conclusion, which is the
same as that we have arrived at in this case."

In the same vein this appears in *Ashley* at 301:

"A municipal charter never gives and never could
give authority to appropriate the freehold of a citi-
zen without compensation, whether it be done
through an actual taking of it for streets or build-
ings, or by flooding it so as to interfere with the
owner's possession. His property right is appro-
priated in the one case as much as in the other.
*Pumpelly* v. *Green Bay Co.,* 80 US (13 Wall) 166 (20
L ed 557); *Arimond* v. *Green Bay Co.,* 31 Wis 316;
*Eaton* v. *Boston, C. & M. R. R. Co.,* 51 NH 504 (12 Am
Rep 147)."

We conclude that plaintiff has pleaded an action-
able cause. The circuit court's judgment is there-
fore reversed and the case is remanded for entry

of order denying defendant's motion to dismiss. Costs to plaintiff.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

ADAMS, J., did not sit.