GERZESKI v DEPARTMENT OF STATE HIGHWAYS

FOUCHIA v DEPARTMENT OF STATE HIGHWAYS

OPINION OF THE COURT

1. TORTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL AGENCIES—
   GOVERNMENTAL FUNCTIONS—STATUTES.

   All governmental agencies are immune from tort liability in all
   cases wherein the government agency is engaged in the exer-
   cise or discharge of a governmental function, unless otherwise
   provided by statute (MCLA 691.1407; MSA 3.996[107]).

2. TORTS—GOVERNMENTAL IMMUNITY—STATUTORY LAW.

   The law of state governmental immunity is, with a few excep-
   tions, strictly statutory.

3. TORTS—GOVERNMENTAL IMMUNITY—HIGHWAYS—NEGLIGENCE—
   GOVERNMENT VEHICLES—PUBLIC BUILDINGS—STATUTES.

   Statutory exceptions to governmental immunity exist where inju-
   ries are caused by defective highways, negligent operation of
   government-owned vehicles, and dangerous or defective condi-
   tions of public buildings (MCLA 691.1402, 691.1405, 691.1406;
   MSA 3.996[102], 3.996[105], 3.996[106]).

4. TORTS—GOVERNMENTAL IMMUNITY—TRESPASS FROM GOVERNMENT-
   OWNED LAND.

   Governmental immunity is inapplicable, in addition to the statu-
   tory exceptions, where damage to private property is caused by
   direct trespasses of an instrumentality from government-owned
   land and where the government maintains a nuisance per se.

5. NUISANCE—GOVERNMENTAL IMMUNITY—NEGLIGENCE—STATE EM-
   PLOYEES—NUISANCE IN FACT.

   The doctrine of governmental immunity bars actions for damages

REFERENCE FOR POINTS IN HEADNOTES

[1–10] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 65
*et seq.*

caused by a nuisance in fact where the condition was created by the ordinary or willful negligence of state employees.

6. NUISANCE—GOVERNMENTAL IMMUNITY—INHERENT DANGER.
   Governmental immunity does not apply where an action based on nuisance stems from a condition which results in inherent danger even under the best of care or a condition which is nuisance at all times and under any circumstances.

7. TORTS—GOVERNMENTAL IMMUNITY—LEGISLATIVE POWER.
   Only the Legislature is empowered to eliminate governmental immunity in Michigan.

8. NUISANCE—NUISANCE IN FACT—BORROW PIT—GOVERNMENTAL IMMUNITY—DROWNING.
   Governmental immunity bars an action against the state arising out of deaths by drowning in a state-owned borrow pit where the borrow pit was an intentional nuisance in fact.

DISSENT BY T. M. BURNS, J.

9. TORTS—GOVERNMENTAL IMMUNITY—STATE EMPLOYEES—LACK OF DUE CARE—CULPABILITY.
   *Intentional actions taken by state employees together with lack of due care may be so culpable as to make the imposition of governmental immunity unconscionable.*

10. NUISANCE—GOVERNMENTAL IMMUNITY—INTENTIONAL NUISANCE—NUISANCE PER SE—NUISANCE BASED ON NEGLIGENCE.
    *There is no case law determinative of the issue whether or not governmental immunity is a defense to an action based on intentional nuisance; an intentional nuisance falls between a nuisance per se, to which governmental immunity is not a defense, and a nuisance based on negligence, to which governmental immunity is a defense.*

Appeal from Court of Claims, Ross W. Campbell, J. Submitted December 10, 1975, at Lansing. (Docket Nos. 22209, 22210.) Decided March 23, 1976. Leave to appeal granted, 397 Mich 832.

Complaints by Delores Gerzeski, administratrix of the estate of Lee Gerzeski, deceased, and Elaine Fouchia, administratrix of the estates of Harley Fouchia, deceased and George Fouchia, deceased,

against the Department of State Highways to recover damages for the drowning deaths of the three deceased persons. Judgment for plaintiffs. Defendant appeals. Reversed and remanded for entry of judgment for defendants.

*Cicinelli, Mossner, Majoros, Alexander & Harrigan, P. C.,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Myron A. McMillan,* Assistants Attorney General, for the defendant.

Before: McGREGOR, P. J., and T. M. BURNS and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendants appeal a judgment entered against them by the Court of Claims. This is one of those troublesome cases, so conducive to making bad law. It involves the tragic deaths of three individuals for whose survivors the law of governmental immunity must deny legal recourse. Our sympathies naturally run to the plaintiffs. The law, unfortunately, does not.

In 1966, the Michigan State Highway Department purchased two tracts of land in Arenac County. From this land, the department removed dirt to be used in the nearby construction of I-75. The excavation resulted in a borrow pit which, having been dug below the water table, soon filled with water. A pond, about 1000 feet long and about 500 feet wide, was formed.

On December 10, 1969, two young boys, Harley Fouchia, age 12, and Lee Steve Gerzeski, age 10, drowned in this pond, which was then covered with ice. The boys had walked across the pond and had fallen through the ice near the place where

the pond drained. When Harley's mother noticed that the boys were missing, she sent his father, George, and grandfather to look for them. They found Harley's bicycle near the pond and saw footprints on the ice. In attempting to rescue the boys, George Fouchia, too, fell through the ice and drowned.

The trial court found that the Highway Department had created and maintained a nuisance in fact. It awarded damages in the sum of $114,275.76 to the estate of George Fouchia, $77,451.20 to the estate of Harley Fouchia, and $89,145.84 to the estate of Lee Steve Gerzeski.

Defendants make a number of assignments of error on appeal. We find one of these, that the trial court erred in denying a defense motion for summary judgment based on governmental immunity[1], to be dispositive and to require reversal. The law of state governmental immunity in Michigan is, with a few exceptions, strictly statutory. *McDowell v State Highway Commissioner,* 365 Mich 268; 112 NW2d 491 (1961). The immunity is authorized by MCLA 691.1407; MSA 3.996(107), which provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

---

[1] Although referred to as a summary judgment, GCR 1963, 117, by counsel and court below, the defense of immunity is one which serves, if proven, to extinguish or cut off the right to relief even though the facts pleaded would otherwise state a claim. Such motion therefore should have been brought under the accelerated judgment provisions of GCR 1963, 116. In this case, however, this matter is one of labels. *See Cibor v Oakwood Hospital,* 14 Mich App 1; 165 NW2d 326 (1968).

The statute specifies exceptions to governmental immunity where injuries are caused by defective highways, MCLA 691.1402; MSA 3.996(102), negligent operation of government owned vehicles, MCLA 691.1405; MSA 3.996(105), and dangerous or defective conditions of public buildings, MCLA 691.1406; MSA 3.996(106). In addition to the statutory exceptions, governmental immunity has been held inapplicable in two other, related instances. The first is where damage is caused by "direct trespasses" of an instrumentality from government owned land onto private property. See *e.g. Ferris v Detroit Board of Education,* 122 Mich 315; 81 NW 98 (1899), *Herro v Chippewa County Road Commissioners,* 368 Mich 263; 118 NW2d 271 (1962), *Pound v Garden City School District,* 372 Mich 499; 127 NW2d 390 (1964). In such cases, the governmental action which caused plaintiff's injuries or property damage has been considered nearly an intentional tort. The *Ferris, Herro* and *Pound* cases all involved damage caused by water escaping from government land, a traditional strict liability tort. Prosser, Torts (4th ed), § 78, p 505, 508–516. See also *Robinson v Township of Wyoming,* 312 Mich 14; 19 NW2d 469 (1945).

The second non-statutory exception is the maintenance of a *per se* nuisance. The facts of the instant case make it important to stress that not all actions based on nuisance circumvent governmental immunity.[2] In *Denny v Garavaglia,* 333 Mich 317, 331; 52 NW2d 521 (1952), nuisances resulting in personal injury were placed in three classifications: (1) nuisances created by illegal conduct *(per se* nuisances), (2) nuisances created by

---

[2] In *McCann v Michigan,* 47 Mich App 326, 333; 209 NW2d 456 (1973), *lv granted,* 390 Mich 765 (1973), another panel made the bare assertion that "actions grounded in nuisance" represent an exception to governmental immunity. We expressly reject this statement.

conduct intended to bring about conditions which, in fact, constitute a nuisance and (3) nuisances created by negligent conduct. In *Royston v City of Charlotte,* 278 Mich 255, 260; 270 NW 288 (1936), the Supreme Court stated:

"Acts in the discharge of governmental functions which create a nuisance *per se* do not come within the immunity otherwise accorded. Want of care in mainte-nance, however, presents the question of negligence only, and not that of a public nuisance, which must rest on *inherent danger even under the best of care."* (Em-phasis supplied.)

Thus, governmental immunity is inapplicable if the alleged nuisance stems from a condition which is "a nuisance at all times and under any circum-stances". *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399, 411; 97 NW2d 90 (1959), quoting 66 CJS, Nuisances, § 3, pp 733–34. If the condition was created by ordinary or wilful negligence, but is a nuisance in fact, governmental immunity will bar an action for damages caused by the condition.

In the instant case, the trial court held that the state had by its "gross negligence" created and maintained an "intentional nuisance", one within the category between the *per se* nuisance and the nuisance created by negligence. Plaintiffs did not assert at trial that the pond was a *per se* nuisance and they do not do so here. On appeal, plaintiffs assert that the case of *Buckeye Union Fire Insur-ance Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970), altered the *Royston* doctrine to include an intentional nuisance.

In *Buckeye,* a building, which the state had acquired by tax forfeiture and had allowed to disintegrate, caught fire. The fire spread to a

neighboring property. Plaintiff insurance company, as subrogee, sued to recover from the state. The Court of Claims found the state liable but denied recovery based on governmental immunity. After affirmance by this Court, the Supreme Court held that no such immunity existed, reversed the trial court and remanded for entry of judgment.

An examination of the decisional language discloses that *Buckeye* did not create a nuisance in fact exception to governmental immunity. In Part III of its opinion, the *Buckeye* Court based its holding not on a nuisance exception but on the theory that a governmental immunity statute is subject to an exception based on the constitutional proscription against taking private property without just compensation. Const 1963, art 10, § 2.[3] The Court held that the fire damage constituted a "taking" for which the state must pay compensation. It concluded:

"There is no sovereign immunity applicable to a situation of nuisance *as we have in this case."* 383 Mich at 644. (Emphasis supplied.)

The absence of a constitutional provision, therefore, renders a nuisance in fact claim subject to governmental immunity. See *Buddy v Department of Natural Resources,* 59 Mich App 598; 229 NW2d 865 (1975).

Plaintiff responds that the instant nuisance did violate a constitutional provision, the Const 1963, art 1, § 17 proscription of the deprivation of life without due process of law. Plaintiff argues that

---

[3] The constitutional provision applicable in *Buckeye* was Article 13, § 1 of the Constitution of 1908, a provision substantially the same as Const 1963, art 10, § 2 except for the latter's requirement that "[c]ompensation shall be determined in proceedings in a court of record".

the protection of life accorded by Const 1963, art 1, § 17 cannot be given a status inferior to the protection of property provided by the condemnation clause as enforced by *Buckeye.*

This is a cogent argument. We find, however, for two reasons, that *Buckeye* must be given so narrow a construction that it be deemed inapplicable to the instant case. First, from an examination of the precedent on which *Buckeye* relies, it appears that *Buckeye* represents an extension of the line of trespass cases, those in which an instrumentality ran from government land onto private land and caused personal injury or property damage. See *e.g. Ashley v Port Huron,* 35 Mich 296 (24 Am Rep 552) (1877), *Herro v Chippewa County Road Commissioners, supra, Commonwealth of Kentucky, Department of Highways v Cochrane,* 397 SW2d 155 (Ky App, 1965).

In several instances, the Supreme Court refused to extend these cases to instances where injury occurred *on* the government owned property. This dichotomy was enunciated in *Kilts v Kent County Board of Supervisors,* 162 Mich 646; 127 NW 821 (1910). There, plaintiff's decedent was killed in a fall from an allegedly dangerous water tower on which he was working. The Court distinguished between a condition of government premises which threatens harm to persons off the premises and one which is dangerous only to persons on the land. By characterizing the matter as one sounding in negligence, not nuisance, the Court found plaintiff's claim barred by governmental immunity. *Kilts* was a reiteration of *Whitehead v Detroit Board of Education,* 139 Mich 490; 102 NW 1028 (1905), where plaintiff, a painter, was injured in a fall from a defective scaffold supplied by defendant. The policy was later reiterated in *Dan-*

*iels v Board of Education of Grand Rapids,* 191
Mich 339; 158 NW 23 (1916) (dangerous stairwell
on school premises), and *Royston v City of Char-
lotte, supra* (a wrongful death claim arising from
the collapse of a swing in a public park). See also
*McDonell v Brozo,* 285 Mich 38; 280 NW 100
(1938), Cooperrider, *The Court, The Legislature,
and Governmental Tort Liability in Michigan,* 72
Mich L Rev 187, 238–249 (1973).

Second, and more importantly, the broad inter-
pretation of *Buckeye* urged by plaintiff would, in
effect, eliminate governmental immunity in Michi-
gan, something only the Legislature can do. Any
damage to person or property can be linked to the
due process clause. We could not reasonably limit
such precedent to a taking of life. Could we justifi-
ably allow recovery for the death of an individual
caused by a nuisance while denying recovery to
one seriously injured by the same nuisance? We
think not. Having crossed that threshold, could
any personal injury be deemed unprotected by due
process and, therefore, barred by governmental
immunity? Again, we are doubtful.

We doubt, further, whether any rational distinc-
tion could be made between those injuries caused
by nuisance and those which result from any other
tort. We do not believe that the Supreme Court
intended to destroy governmental immunity in
*Buckeye.* As another panel of this Court noted, we
certainly could not sanction such results without
more specific language by the Supreme Court.
*Kelley v East Lansing,* 50 Mich App 511; 213
NW2d 557 (1973).

We find these same problems present in the
*Buckeye* rationale. As one commentator notes, in
criticizing the *Buckeye* holding, our difficulties
stem from the *Buckeye* opinion's classification of
the damage as a "taking":

"As a basis for claim against the government, the 'taking of property for public use' has constitutional status because it involves not merely a *loss* to the citizen as the by-product of governmental activity, but also an *unjust enrichment of the governmental unit* at the expense of the citizen. It is one thing to stretch the taking-for-use concept to include situations in which it can fairly be said that the government has appropriated to itself without acquisition of title and perhaps without physical occupation the *use* of the citizen's proprietary interests. It is quite another to say that a taking-for-use occurs *whenever damage is done."* Cooperrider, *1971 Annual Survey of Michigan Law, Torts,* 18 Wayne L Rev 503, 522 (1972). (Emphasis in original.)

Given these problems and no clear precedent from the Supreme Court, we are constrained to find governmental immunity applicable to the instant case.

We, therefore, reverse the trial court's decision and remand for entry of judgment for defendants. No costs.

McGREGOR, P. J., concurred.

T. M. BURNS, J., *(dissenting)*. I respectfully dissent.

To avoid the barrier of governmental tort immunity, the plaintiff who has suffered injury at the hands of a governmental agency is required to neatly fit his case into one of the few, narrow exceptions to the rule. Unfortunately, the tragic deaths with which we are herein concerned did not occur within a factual framework which clearly fits one of the exceptions. Nevertheless, I believe that the combination of factual circumstances surrounding this case requires affirmance of the trial court.

I.

The crucial facts established in the lower court are as follows:

1. The borrow pit was intentionally located in line with an existing drain so that it would fill with water.

2. The drownings occurred at the point where the warmer water from the drain enters the pond causing the existence of thin ice.

3. The borrow pit was located in an area in which many families with minor children lived.

4. The pit was adjacent to and in clear sight of the highway and another road.

5. The policy of the Highway Department relative to borrow pits was stated to be, in part:

"[G]enerally, deep excavation should be limited to pits located out of sight of the highway.

\*　\*　\*

"At the time the decision is reached to excavate a borrow pit below the drainable elevation, as outlined above, the District Engineer should so advise the Excess Property Section of the Procurement Division in Lansing. Such notice should give the description of the property and also the approximate date that excavation will be completed. This advance notice will permit formulation of plans to sell the property at the earliest possible date after the removal of borrow is completed.

\*　\*　\*

"It is imperative both to the Department and the public at large that the policy and procedure be followed in order that liability for personal injury or possibly death be avoided. Children particularly are inclined to play near these pits and on numerous occasions swim in them, and the fence around these pits, or

signs, mean little if anything in the way of a deterent
*[sic]*."[1]

6. After completion of the borrow pit, no fence
was put around it and no warning signs main-
tained.

7. The pit was in fact used for recreational
purposes including swimming, fishing, boating and
snowmobiling.

The trial judge found that the pond constituted
an attractive nuisance; that it was an "irresistible
attraction to young children". School buses passed
by the pond within clear view twice a day. There
was a floating raft on the pond. There was a
pathway leading from the roadway to the pond. In
light of these facts, the trial judge found that the
Highway Department was grossly negligent in not
fencing and posting the pond. The judge also found
that in winter, the weakness in the ice caused by
the flow of water from the drain constituted a
natural trap for the unwary.

## II.

As the majority points out, the nuisance created
by defendants falls between a nuisance per se, to
which governmental immunity is not a defense,
and a nuisance based on negligence, to which
governmental immunity is a defense. I can find no
case law determinative of the issue whether or not
governmental immunity is a defense to an action
based on intentional nuisance, as we have in this
case. It is my contention that the intentional
actions taken by the Highway Department in this
case and the lack of due care exercised by the

[1] July 9, 1964, State Highway Department memo from the Director
of Procurement Division to Excess Property Section Personnel.

department were so culpable as to make the imposition of governmental immunity unconscionable.

## III.

I must also comment on the majority's interpretation of *Buckeye Union Fire Insurance Co v Michigan,* 383 Mich 630; 178 NW2d 476 (1970). I do not read *Buckeye* as a mere extension of the nuisance-trespass cases. The Court in *Buckeye* went to great lengths to work around governmental immunity in a simple nuisance-in-fact factual setting. The employment of a constitutional provision to "outrank" the Legislature-created immunity created a sizeable gap in the doctrine. Taking the position that *Buckeye* represents a "loophole" in the governmental immunity doctrine, I must agree with the plaintiffs' argument that the constitutional provision that no citizen shall be deprived of life without due process of law should take no lesser rank than the provision relied upon in *Buckeye.*

"When the Commonwealth or a municipal corporation, whether acting in its governmental or proprietary capacity, seizes or damages the property of a citizen for public good, compensation, under a constitutional mandate (Const §§ 6 and 58), must be made to the owner. Common justice demands that the right to be safe in life and limb should be as sacred to the citizen as his property rights. The rule that results in this unfairness of the community group to the individual citizen has become apparent to many courts, hence the tendency of all recent decisions is not to extend the immunity of municipalities." *Hoggard v City of Richmond,* 172 Va 145; 200 SE 610, 615 (1939).

I would affirm.